UNITED STATES of America, Appellee,

v.

Mahlon HEADID, Appellant.

No. 77–1504.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 10, 1977.

Decided Nov. 14, 1977.

Donald E. O'Brien, Sioux City, Iowa, for appellant.

Keith Van Doren, Asst. U. S. Atty., Sioux City, Iowa, for appellee; Evan L. Hultman, U. S. Atty., Sioux City, Iowa, on brief.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and TALBOT SMITH, Senior District Judge.*

PER CURIAM.

Mahlon Headid was charged in a three-count indictment with transporting and causing to be transported in interstate commerce two stolen tractors valued at over $5,000 in violation of 18 U.S.C. §§ 2 and 2314; conspiring with Daniel Runge, Delores Gregg and David Garritsen to commit this illegal transportation, in violation of 18 U.S.C. § 371; and receiving, concealing, storing, bartering or selling the tractors, knowing them to have been stolen, in violation of 18 U.S.C. §§ 2 and 2315. Headid

* The Honorable Talbot Smith, Senior District Judge, Eastern District of Michigan, sitting by designation.

was convicted on all three counts in a joint jury trial with co-defendants Daniel Runge, Delores Gregg and Milo Headid.[1] The District Court[2] imposed a $5,000 fine on Headid for each count and sentenced him to three concurrent five-year terms of imprisonment, which are to be suspended upon the service of six months imprisonment in a "jail type or treatment institution." Upon his release from confinement, he is to be placed upon probation for a period of three years. Headid appeals.

The following facts underlie Headid's conviction. On the evening of April 12, 1976, Daniel Runge, David Garritsen and Danvers Jansen stole a Case Uniloader tractor from an equipment dealer in Sioux Falls, South Dakota, and transported it to a farm in Minnesota for safekeeping.[3] They also formulated a plan to return and steal a second tractor from the same dealer. Unable to arrange a deal with the buyer they had originally contemplated, they decided to contact Mahlon Headid. Garritsen, a former employee at Headid's Sioux City, Iowa, salvage yard, telephoned Headid and asked if he knew anyone who "could use a couple of loaders." Garritsen apprised Headid that the tractors involved were stolen. Headid agreed to buy the tractors, and a price was discussed.

On the evening of April 14, 1976, Garritsen, Runge and Jansen stole a second tractor in Sioux Falls, South Dakota. They transported this tractor directly to Sioux City, Iowa, where they met Headid and Delores Gregg at a truck stop. Headid and Gregg led them to Headid's son's farm near Sergeant Bluff, Iowa. The stolen tractor was unloaded there during the early morning hours of April 15. Headid gave $200 in expense money to Garritsen, Runge and Danvers, who then left to pick up the other tractor which had been stored in Minnesota. They transported this tractor to Sioux City, Iowa, where they once again met Headid at a truck stop and proceeded with him to his son's farm. The second tractor was unloaded there during the daylight hours of April 15.

Garritsen then removed the serial number from the first tractor they had delivered. He had already performed the same operation on the tractor that had been stored in Minnesota. At Headid's direction, the casting numbers were also ground off both tractors. Headid furnished Garritsen with blank bills of sale and with serial number plates off two Wisconsin motors, which were to be used in filling out the bills of sale. Finally, he gave Garritsen an additional $1,800 in cash for the tractors. Following this transaction, Headid made numerous telephone calls to Jansen, Garritsen and Runge to ascertain how they were progressing with the fabrication of phony bills of sale.

 The foregoing facts support the three-count indictment under which Headid was charged and convicted. Headid attacks the validity of his convictions on several evidentiary grounds. First, he challenges the trial court's handling of the examination of the accomplices Garritsen and Jansen. The trial court sustained the Government's objections to attempts by defense attorneys on cross-examination of Garritsen and Jansen to elicit testimony about specific instances of criminally related conduct that had not resulted in felony convictions. The trial court also refused to allow the defense to circumvent these rulings through the direct examination of a jailmate of Jansen's. Headid contends that these restric-

---

1. Daniel Runge was charged with and convicted of Counts I (transportation) and II (conspiracy). Delores Gregg was charged with Counts II and III (receiving). The jury acquitted her on Count II and convicted her on Count III. The trial court set aside her conviction on Count III. Milo Headid was charged with and acquitted by the jury on Count III.

2. The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa.

3. Garritsen and Jansen, who both testified at trial, pled guilty to federal charges arising from the events described here. At the time of trial, they had not yet been sentenced.

tive rulings constituted an abuse of discretion and were prejudicial to him.[4]

■ The scope and extent of cross-examination are matters left to the sound discretion of the trial court. Although it is vital that a searching cross-examination be permitted where the credibility of an important witness is being challenged, *Gordon v. United States*, 344 U.S. 414, 417, 73 S.Ct. 369, 97 L.Ed. 447 (1953), once the right of cross-examination has been substantially and thoroughly exercised, the allowance of further cross-examination lies wholly within the discretion of the trial court. *United States v. Bly*, 464 F.2d 1235, 1237 (8th Cir. 1972).

■ Garritsen and Jansen, admitted accomplices, testified on direct examination to numerous prior felony convictions and to having pled guilty to charges arising from the instant case in exchange for prosecutorial promises relating to sentencing recommendations. Both were subjected to extensive cross-examination by four separate defense attorneys.[5] A review of the record discloses that Garritsen's and Jansen's questionable credibility was ·emphasized throughout their testimony and that they were subjected to substantial and extensive cross-examination and impeachment. The facts that Garritsen and Jansen had led lives of crime and had motives of self-interest in testifying for the Government were openly admitted from the outset of their testimony, and, in light of the extensive cross-examination which was allowed, further cross-examination of an impeaching nature would merely have been cumulative and repetitious. *United States v. Bly, supra* at 1237. Headid has not demonstrated that he was prejudiced by the trial court's handling of the cross-examination of Garritsen and Jansen, and we conclude that there was no abuse of discretion here.

■ Headid's second allegation of trial error also involves accomplice testimony. On cross-examination by the attorney for defendant Gregg, Garritsen alluded briefly to prior dealings in stolen property with Headid. On redirect examination, the Government attempted to elicit further testimony on this subject. The defense immediately objected to this line of questioning. The trial court expressed concern with the potentially prejudicial impact of this type of testimony, sustained the objection to the testimony and instructed the jury to disregard it. Headid characterizes the trial court's handling of this matter as erroneous. Assuming the evidence in question to have been properly excluded under Fed.R. Evid. 403, we consider the trial court's response to have been entirely appropriate.[6] *United States v. Aaron*, 553 F.2d 43, 46 (8th Cir. 1977). Headid was protected by the trial court's rulings and no error occurred here.

■ It is Headid's final contention that the trial court erred in denying his motions for judgment of acquittal for two reasons: the Government's witnesses were not credible and the value of the stolen tractors was not shown to be over $5,000. Headid's first

---

4. Headid also urges that even if the limitations be deemed nonprejudicial, they abridged his Sixth Amendment right to confrontation. We consider this contention to be wholly without merit. Headid was confronted with the witnesses against him and given ample opportunity to cross-examine them.

5. The trial court refused to allow the defense, either on cross-examination or through extrinsic evidence, to explore certain specific conduct of the accomplices which had not resulted in felony convictions. These restrictions appear to have been wholly consonant with Fed.R. Evid. 608 and well within the trial court's considerable discretion to control cross-examination.

6. We note that under Fed.R.Evid. 404, evidence of crimes, wrongs or acts may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge or absence of mistake or accident. Ostensibly, Headid's receipt and consideration of Garritsen's previous offers of stolen property would have been probative of Headid's knowledge and absence of mistake concerning the stolen nature of the goods in the present case. The trial court's exclusion of this evidence was, however, apparently based upon an assessment of potential prejudice under Fed. R.Evid. 403, which authorizes the exclusion of evidence otherwise admissible under Rule 404 where probative value is substantially outweighed by the dangers of unfair prejudice.

argument may be answered by simple reference to the axiom that the jury is the judge of the credibility of witnesses. Insofar as the valuation of the stolen tractors is concerned, the evidence presented by the Government established that each tractor had a value of more than $5,000, and, thus, the value requirements of 18 U.S.C. §§ 2314 and 2315 were met and proved. Finally, viewing the evidence in the light most favorable to the Government, we find the jury's verdicts of guilty to be supported by substantial evidence.

Affirmed.