UNITED STATES of America, Appellee,

v.

**Bennie PARKER, Appellant.**

**No. 78–1415.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 6, 1978.

Decided Nov. 9, 1978.

David M. Korum, Sestric, Karohl, La-Barge & Korum, Kirkwood, Mo., filed brief for appellant.

Robert D. Kingsland, U. S. Atty., and Stephen B. Higgins, Asst. U. S. Atty., St. Louis, Mo., filed brief for appellee.

Before HEANEY, STEPHENSON and HENLEY, Circuit Judges.

PER CURIAM.

Bennie Parker appeals from his conviction following a jury trial of one count of conspiracy in violation of 18 U.S.C. § 371, four counts of falsely altering and forging United States Treasury checks in violation

of 18 U.S.C. § 495, and four counts of uttering and publishing those checks also in violation of 18 U.S.C. § 495. The district court[1] sentenced appellant to three years imprisonment on the conspiracy charge and to seven years imprisonment on each of the forgery and uttering counts, the latter sentences to run concurrently with each other, but consecutively to the three year sentence. Appellant filed a timely notice of appeal. We affirm.

Prior to discussing the issues raised on appeal, it is necessary to summarize the evidence adduced at trial. Bernard Pitts testified that in 1976 and 1977 he was a recipient of supplemental income payments or disability payments from the Social Security Administration and that he received these payments monthly through the mail. At the time, Pitts was living at 5555 Pershing in St. Louis, Missouri. In 1976 his birth certificate, high school certificates and diploma, and Social Security card were stolen from his residence. During this period of time, Pitts became acquainted with appellant and his girl friend, Karen, and told appellant that he was receiving Social Security checks. Pitts denied ever having given appellant permission to change his (Pitts') address, to keep any of the Social Security checks, to sign his name on the back of any of the checks, to open a bank account in his name, or to draw checks on a bank account in his name.

Pitts further identified four Social Security checks dated November 1, 1976, January 1, 1977, February 1, 1977 and August 1, 1977. The checks were payable to Pitts, and were endorsed with the signature "Bernard Pitts." He testified that he had never received them and that he did not sign his name to them. He further testified that he had not given anyone, including appellant, permission to take the checks or to sign his name to them. The November check had been mailed to 5555 Pershing, the January and February checks had been mailed to Post Office Box 8165, Laclede Station, and

the August check to 5630 Pershing. Pitts testified that he had never used the post office box or allowed anyone to have his mail sent there and that he had never lived at 5630 Pershing or had his mail delivered there.

Finally, Pitts testified that he had never had an account at the Brentwood Bank nor authorized anyone to open any account on his behalf and that he had not authorized anyone to have his Social Security checks direct wired to that Bank.

Mary Taylor, an employee at the Brentwood Bank, testified that on November 8, 1976 appellant came to the bank in the company of a woman and that they identified themselves as Bernard and Karen Pitts. Appellant and the woman opened a personal checking account in the amount of $50.00. The deposit consisted of a government check with cash returned to the depositor. Mrs. Taylor further testified that on May 2, 1977 appellant, representing himself as being Bernard Pitts, opened a savings account.

Robert Stewart, a vice president of the Brentwood Bank, identified a number of bank records and identified appellant as the person who was known at the bank as Bernard Pitts. He further identified a form signed by a "Bernard Pitts" which allowed automatic transfer of Social Security checks to a bank for deposit in the customer's account. He further testified that at least three checks were deposited in the checking account of Bernard and Karen Pitts pursuant to this automatic transfer authorization. Stewart testified that the entire account was made up of deposits of United States Treasury checks.

Charles Mischeaux, who was at all relevant times an assistant vice president of the Brentwood Bank, testified that appellant had cashed the August, 1977 check at the bank and at that time represented himself as being Bernard Pitts.

Stephen Cain, a Secret Service documents examiner, testified that he had compared

---

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

several of the questioned documents with appellant's handwriting exemplars. It was Cain's opinion that appellant had signed the name "Bernard Pitts" on the back of each of the four Social Security checks. He further testified that appellant had signed the name "Bernard Pitts" to the checking account signature card at the Brentwood Bank and that there was a "strong probability" that appellant had signed the name "Bernard Pitts" to the savings account signature card, on a number of personal checks, and on the authorization for automatic transfer form.

Robert Pelc, an administrative assistant with the Social Security Administration, testified that Pitts had submitted forms to the Social Security office claiming nonreceipt of several monthly checks. He also testified about the procedures by which a Social Security recipient could change the address to which his checks were sent.

Probably the most damaging evidence against appellant was the testimony of Secret Service Agent Daniel Flaherty. Flaherty had been investigating the case and had interviewed appellant. During the course of the interview, appellant gave a statement which was reduced to writing and signed by appellant. In the statement appellant said that he and "Karen" had received Treasury checks payable to Bernard Pitts and had used the funds for themselves. He admitted opening the checking and savings accounts at the Brentwood Bank and signing the authorization for direct deposit of the Social Security checks. The statement concluded:

> I was well aware that when I signed the name of "Bernard Pitts" to these checks and cashed them, that they were not mine. I also know that these funds were not mine and not due me.

Robert Leachman, a United States Postal Inspector, testified about the procedures followed in taking appellant's statement.

Elmer Gandt, a United States Postal Inspector, briefly testified that postal authorities routinely destroy change-of-address forms after one year.

The sole defense witness was Ronolee Henderson, a clinical psychologist employed at the St. Louis State Hospital. She testified that, under her direction, certain tests were administered to Bernard Pitts in January, 1977, for the purpose of evaluating his intellectual functioning and determining whether there was any cerebral dysfunction. She testified that it was her opinion that Pitts had some thought disorder and was unreliable in terms of recall, but she also said that she was unable to form any opinion as to the length of time that this condition would have continued.

The defense theory of the case, which was largely brought out during cross-examination of government witnesses, was that Pitts had indeed consented to appellant's cashing the checks and that Pitts' mental condition made him an unreliable witness.

The jury, after 51 minutes of deliberation, returned a guilty verdict.

On this appeal, appellant alleges that the district court erred by: (1) overruling his motion for judgment of acquittal at the close of all the evidence; (2) failing to strike the testimony of a government witness as being repetitious, cumulative and irrelevant; (3) admitting certain exhibits into evidence; and (4) reading and giving to the jury a copy of the indictment. We address these claims *seriatim*.

*Judgment of Acquittal.*

■ Appellant contends that because there was "convincing" evidence that he had Pitts' permission to cash the checks in question, the court should have granted his motion for judgment of acquittal at the close of all the evidence. Although there was some arguably conflicting evidence as to whether Pitts had given appellant permission to change Pitts' mailing address and to hold Pitts' mail, there was no evidence that appellant had permission to cash the checks. In any event, resolving questions about this arguably conflicting evidence and questions as to the credibility of witnesses were matters for the jury. *See, e. g., United States v. Lanier*, 578 F.2d 1246, 1251 (8th Cir. 1978); *United States v. Head-*

*id,* 565 F.2d 1029, 1032 (8th Cir. 1977). Thus, there was no error in denying the motion for judgment of acquittal.

*Failure to Strike Testimony.*

 Appellant next contends that the court erred by refusing to strike the testimony of Postal Inspector Gandt because it was cumulative and irrelevant. Gandt's direct testimony, which takes up only one and one-half pages of transcript, related solely to the procedure by which postal authorities routinely destroy change-of-address forms after one year.

Appellant made no objection to Gandt's testimony during direct examination. During cross-examination, Gandt testified that he had no familiarity with the facts of appellant's case and appellant thereupon moved to strike the testimony as irrelevant. The motion was denied.

Appellant's argument that the testimony was irrelevant is unpersuasive. Appellant had extensively questioned Postal Inspector Leachman regarding the change-of-address form and had suggested that the inability to produce the form mitigated his guilt.

Appellant's argument that Gandt's testimony was cumulative to the testimony of Inspector Leachman is more accurate. Essentially the same testimony was given by Leachman regarding the procedures for retaining or destroying change of address forms. Even assuming that admission of Gandt's testimony was error, however, it was harmless error in view of the overwhelming evidence of guilt.

*Admission of Exhibits.*

 Appellant contends that the court erred in admitting into evidence certain bank records, including a checking account signature card and photostatic copies of certain checks. These exhibits all bore the signature of "Karen Pitts." Appellant contends that there was no evidence tending to show that the person who signed the name "Karen Pitts" to these documents was the "Karen Cartwright" who was named as appellant's co-conspirator in the indictment. Thus, appellant's argument is also an indi-

rect attack on the sufficiency of the evidence to support his conviction on the conspiracy charge. Regardless of how his argument is characterized, it is unpersuasive.

There was substantial evidence establishing a conspiracy between appellant and Karen Cartwright. Appellant told Secret Service Agent Flaherty that he and "Karen Cartwright" were living in the same building as Pitts. Appellant's written statement is replete with references to "Karen," although he once referred to her as "Karen Moses." Additionally, Post Office Box 8165, to which two of the questioned checks were mailed, was rented by appellant and "Karen Cartwright." Viewing all the evidence in the light most favorable to the government, the jury could have found beyond a reasonable doubt that appellant had conspired with the woman who represented herself as Karen Pitts, and that that woman was Karen Cartwright.

*Giving Indictment to Jury.*

 Appellant's final contention is that the trial court erred in reading the indictment to the jury and in allowing the jury to take a copy of the indictment into the jury room during the deliberations. The sole claim of prejudice is that the conspiracy count of the indictment contains two enumerated overt acts (out of a total of thirteen) which are not supported by the evidence adduced at trial. We find this contention unpersuasive.

While in some circumstances better practice may require that the indictment, or portions thereof, be neither read to the jury nor sent to the jury room during deliberations, ordinarily these matters rest within the sound discretion of the trial court and absent a showing of prejudice to the defendant we are reluctant to find an abuse of discretion and to reverse. *See, e. g., United States v. Harvey,* 540 F.2d 1345, 1355 (8th Cir. 1976); *United States v. Polizzi,* 500 F.2d 856, 876 (9th Cir. 1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *United States v. Warner,* 428 F.2d 730, 736 (8th Cir. 1970).

It seems to be implicitly conceded by appellant's argument that eleven of the thirteen alleged overt acts had evidentiary support;[2] indeed the evidence as a whole overwhelmingly supports the verdict of guilt of the conspiracy charge. The two questioned overt acts relate respectively to a telephone call allegedly made by appellant and to withdrawals of funds made by appellant and Karen Cartwright. As we have noted, the jury could have found that Karen Cartwright was the same person as Karen Pitts who is identified as a conspirator with appellant. Thus, we have only the alleged telephone call apparently being completely unsupported by the evidence.

In view of the overwhelming evidence of guilt of conspiracy and the nature of the allegedly unsupported overt act, we think the court's instructions as a whole including the instruction that the indictment was not to be considered evidence of guilt adequate to assure the appellant a fair trial and to convince us that the error, if any, in reading the indictment and sending it to the jury was harmless beyond a reasonable doubt.

Finally, we will note that although the appellant made timely objection to submission of the indictment to the jury, our search of the transcript of proceedings before the district court discloses no objection to that submission based upon alleged lack of evidence to support individual overt acts charged. Rather, objection was made that the indictment was merely a pleading and that if submitted to the jury the indictment "would take on the view of a piece of evidence." (Tr. 347)

The judgment of conviction is affirmed.

---

2. In order to sustain a conspiracy conviction it was not necessary for the government to prove the occurrence of every overt act alleged in the indictment. Proof of one overt act in furtherance of the conspiracy will suffice. *See, e. g., United States v. Adamo*, 534 F.2d 31, 38 (3rd Cir.), *cert. denied sub nom. Kearney v. United States*, 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976); *United States v. Cassell*, 452 F.2d 533, 536 (7th Cir. 1971).