**UNITED STATES of America, Appellee,**

v.

**Daniel RUNGE, Appellant.**

**No. 77–1315.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1978.

Decided Feb. 13, 1979.

Rehearing Denied March 28, 1979.

William H. Gilliam (argued), of Gottsch-alk, Patterson & Gilliam, Waterloo, Iowa, on brief, for appellant.

James H. Reynolds, U. S. Atty., Cedar Rapids, Iowa, argued and on brief, for appellee.

Before GIBSON, Chief Judge, and LAY and HEANEY, Circuit Judges.

PER CURIAM.

Daniel Lee Runge was charged with transporting and causing to be transported in interstate commerce two stolen tractors valued at over $5,000, in violation of 18 U.S.C. § 2 and § 2314, and conspiring with Mahlon Headid, Delores Gregg and David Garritson to commit the illegal transportation, in violation of 18 U.S.C. § 371.[1] He appeals his conviction pursuant to a jury verdict which followed a joint trial with Gregg, Mahlon Headid and Milo Headid. He also appeals denial of a pro se post-trial Fed.R.Cr.P. 33 motion for new trial.[2]

The facts revealed at trial, summarized in the light most favorable to the government, are as follows. On the evening of April 12, 1976, Runge, Garritson, and Danvers Jansen stole a uniloader tractor from an equipment dealership in Sioux Falls, South Dakota, and transported it to Lake Benton, Minnesota. After arranging for its sale to Mahlon Headid, they returned to Sioux Falls and stole a second tractor on April 14, 1976. They transported the second tractor to Headid in Iowa, returned for the first tractor, and delivered it to Headid also.

1. Gregg was acquitted on the conspiracy charge and her conviction on a receiving charge was set aside. Headid was convicted of transportation, conspiracy and receiving. Headid's conviction was affirmed by this court in an opinion reported at 565 F.2d 1029 (8th Cir. 1977).

2. Judgment was entered on April 11, 1977. Runge was sentenced to a term of seven years imprisonment on the transportation count and five years on conspiracy, the sentences to run concurrently. He filed a timely notice of appeal. His motion to voluntarily dismiss the appeal pursuant to a plea bargain entered on state charges arising from the same incident was granted on May 19, 1977. His June 1977 pro se motions for, inter alia, leave to reinstate his appeal and for a new trial on the basis of newly discovered evidence were denied in October 1977. Following appeal to this court, the mandate dismissing Runge's first appeal was recalled and the appeal was reopened. The district court was ordered to enter a nunc pro tunc order denying the motion for new trial, and the appeals from the conviction and from denial of post-trial motions were ordered consolidated for argument.

The theft was Jansen's idea, and he and Garritson elicited Runge's help because he knew how to run the tractors. Runge showed Garritson how to run the tractor, helped load it on a truck, and took it to Minnesota with Garritson and Jansen. Thereafter, Runge rented a U–Haul truck to carry the second tractor, helped to load it and unload it in Iowa, and accompanied the others in retrieving the first tractor from Minnesota and delivering it to Iowa. He was present when the serial numbers were removed and the casting numbers were ground off. Headid paid $1,800 in cash for the tractors, and Runge received $600.

Jansen and Garritson testified against Runge, and their stories coincided on the above particulars. Their implication of Runge in the conspiracy was corroborated by a witness who identified Runge as the person who rented the U–Haul truck on April 14, by a sheriff who saw Runge in the cab of the truck when the threesome removed the first tractor from Minnesota on April 15, and by identification of fingerprints on a bill of sale form as Runge's.

█ The evidence summarized above clearly is sufficient to uphold the jury's verdict and its implicit rejection of Runge's frame-up and alibi defense.

*The Direct Appeal.*

We have examined Runge's numerous challenges to the conviction and find them to be generally without merit.

A. *Evidence of Other Crimes.*

Fourteen items are listed in Runge's brief, most of which simply do not fit within the rule proscribing admission of evidence of other crimes, wrongs, or acts, either because they are not evidence of Runge's involvement in other crimes or were not introduced by the government. They are almost frivolous, both individually and when considered together.

█ Two of the allegations merit discussion. The first is introduction into evidence of a mug shot of Runge and statements by a sheriff that he had kept the

picture in his files. An inference of a prior criminal record could be, but need not necessarily be, drawn from the existence of Runge's mug shot in the sheriff's files, and thus it might be evidence of other crimes or wrongdoing. This court has stated that it does not endorse admission of obvious "mug shots," *United States v. Bohr,* 581 F.2d 1294, 1299 (8th Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978), but has not adopted a per se rule requiring reversal. The picture could be admissible to show identity. *See* Fed.R.Evid. 404(b). Identity *was* an issue, and the picture was used for Garritson and Jansen to establish Runge's appearance in April 1976. More importantly, it was used by a sheriff to identify Runge as being in Minnesota when the first tractor was moved and thereby to corroborate the accomplice testimony. No objection was made to admission of the mug shot on the ground that it was evidence of other crimes. Where it is important proof of identity and a limiting instruction is given, introduction of a mug shot is not plain error. *United States v. Bohr, supra,* 581 F.2d at 1300. No limiting instruction was given or requested here. However, we conclude even if the mug shot should not have been admitted, its admission was harmless beyond a reasonable doubt in light of the evidence of Runge's guilt on the record as a whole.

The second issue concerns testimony involving threats against witnesses and whether this evidence should have been admitted. The court sustained defense counsel's objection to admission of letters purportedly written by Runge which the government wanted to use to show Runge's attempts to influence witnesses' testimony. However, some witnesses did testify that they had received threats in attempts to persuade them not to testify. Although no one identified Runge as the person making the threats, it can be argued that the jury could infer that Runge or perhaps Milo Headid made the threats. The threats are evidence of other crimes. *See United States v. Weir,* 575 F.2d 668 (8th Cir. 1978).

■ If the person making the threats could have been identified, that might be relevant evidence on the key identity question in Runge's case, as an admission by conduct or as showing knowledge of guilt. No perpetrator was identified by any witness, however, so that the evidence appears irrelevant, somewhat confusing, and prejudicial in that it suggests an improper basis for a guilty verdict. *Id.* at 671. Also, it does not appear to meet the test that evidence of other crimes be clear and conclusive or not be vague or speculative. *United States v. Goehring,* 585 F.2d 371, 372 (8th Cir. 1978). It was evidently not clear at the time the testimony came in, however, that the threats could not be linked to a certain defendant.

There was no objection to such testimony when it first came in, and Runge's counsel pursued it on cross-examination to Runge's benefit. Objection was made the second time threats came up. The court noted it had come in earlier without objection, and expressed reservations about hearsay aspects, but allowed the question. Prolonged questioning concerning threats was allowed on direct and cross-examination of defendant Gregg, without objection. Under these circumstances, it is difficult to say the district court committed plain error in allowing the testimony. *Cf. United States v. Weir, supra,* (proper objection made). Furthermore, we deem any error harmless in that the strongest evidence against Runge was the accomplice testimony, and there was no evidence of threats against Garritson or Jansen. The other identifications and the fingerprints make a strong case.

B. *Ineffective Assistance of Counsel.*

Runge makes five allegations of ineffective assistance. They are:

1. Inadequate trial preparation time of two weeks allowed counsel.

2. Inadequate investigation by counsel, as revealed by failure to discover material set forth in Runge's pro se Rule 33 motion.

3. Inadequate representation at trial.

4. Failure to object to prejudicial material during trial, mainly the other crimes evidence referred to above, and to the prosecutor's comment during final argument on Runge's failure to testify.

5. Failure to follow Runge's directions, particularly not to waive reporting of final arguments.

■ The transcript reveals that Runge's attorney was active in making motions, objecting, cross-examining government witnesses, and putting on Runge's alibi and frame-up defenses. Five attorneys represented four defendants, and to reduce confusion the trial court ruled that an objection made by any defense counsel would apply to all defendants, unless a defendant opted out. Also, post-trial motions were applied to all defendants and Uhlir, Runge's attorney, made several. He also made important pretrial motions (Brady, discovery of witnesses, motion in limine, removal of witnesses). He cross-examined nearly every government witness. As effectively as possible, he undermined attempts to identify Runge, and impeached the accomplice testimony through use of prior convictions and suggestions that they were government informers. He was successful in having letters written by Runge to Garritson, which apparently involved threats, suppressed. He also lessened through cross-examination the possibility that the jury would infer that Runge had threatened witnesses. In short, the record does not indicate that the short preparation time (which the government alleges was due to Runge's failure to cooperate with three prior attorneys) prejudiced Runge's defense, and it affirmatively shows adequate representation at trial. Some of the material in Runge's Rule 33 motion, which he alleges his counsel should have discovered earlier, especially that concerning undercover activities of the accomplices, was the subject of Uhlir's cross-examination. It is true that the mug shot and the testimony concerning threats should have been objected to, and cautionary instructions urged. However, given the evidence against Runge, we conclude this failure did not materially preju-

dice his defense so as to make his representation constitutionally defective.

Of course, Uhlir had a duty to exercise his own judgment and not necessarily acquiesce in all of Runge's demands. The failure to have final arguments recorded may have been a mistake, however, since there is an allegation of improper prosecutorial comment on Runge's failure to testify. Defendant Headid's counsel moved for a mistrial after completion of final arguments on the basis of the prosecution's comments, and Uhlir joined the motion, although asserting different reasons. The trial judge said he recalled "inferences" about Runge not taking the stand. The prosecutor denied this, saying that the only reference was to the lack of evidence on Runge's part. The judge said he would have cautioned the jury if the objection had been contemporaneous, but due to its timing he would cover the subject in the instructions. Instruction 21 correctly instructed the jury that a defendant is not compelled to testify and that no inference of any kind could be drawn from failure to testify.

■■■ Review of the issue is hampered by failure to have the arguments recorded or make some sort of record thereafter. However, improper prosecutorial comment on a defendant's failure to testify does not necessarily require reversal or declaration of a mistrial, *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The prejudice Runge suffered by his attorney's failure to have the arguments recorded presumably relates to difficulty in supporting his argument on appeal that the trial court erred in not specifically admonishing the jury to disregard the comment. In view of the record we deem any error harmless in the light of the evidence against Runge, and the cautionary instruction given by the court. Under the circumstances Runge has not shown material prejudice to his defense from his attorney's inaction.

C. *Value of the Stolen Tractors.*

■■■ Runge argues there was insufficient evidence to demonstrate that the stolen

tractors had a value of $5,000 or more. The same point was raised by Headid in his appeal to this court. The evidence was found sufficient, and the transcript amply supports this finding. *See United States v. Headid,* 565 F.2d 1029, 1031–32 (8th Cir. 1977).

D. *Speedy Trial.*

Runge complains of the 130 day delay between his September 23, 1976, indictment and January 31, 1977, the day trial commenced. He does not refer to any motion to dismiss for failure to grant a speedy trial and none appears in the district court file or in the trial transcript. Thus the issue does not appear to have been presented to the district court and therefore is not properly raised on appeal.

■■■ In any event, the claim is without merit. The 114 day delay between his September 30, 1976, arraignment and trial is well within the 180 day period applicable to offenses charged in indictments filed during the period between July 1, 1976, to July 1, 1977. 18 U.S.C. § 3161(g). The defense appears to have been partly responsible for the delay. Runge had two attorneys before Uhlir and moved for continuances on October 19, 1976, and January 26, 1977. Furthermore, no specific prejudice is alleged to have resulted from the delay.

E. *Erroneous Instruction on Accomplice Witness Testimony.*

■■■ Runge argues the trial court erred in failing to instruct the jury that conviction cannot rest on the uncorroborated testimony of an accomplice. The trial court properly instructed the jury to receive the accomplice testimony with caution and scrutinize it with care. He then stated: "You may convict a person accused of crime upon the uncorroborated testimony of an alleged accomplice only if you believe that the testimony of the accomplice proves the guilt of the defendant beyond a reasonable doubt." This is a correct statement of the law. *United States v. Pensinger,* 549 F.2d 1150, 1152 (8th Cir. 1977).

**F.** *Error in Failing to Admonish Jury Concerning Evidence of Runge's Prior Convictions.*

 No request was made for such an instruction, probably because the evidence referred to was generally not evidence of other crimes or else was not introduced by the government. There was no evidence concerning Runge's prior convictions, other than a possible inference from the mug shot.

**G.** *Error in Restriction of Cross-examination of Accomplice Witnesses, Jansen and Garritson.*

 Because Jansen and Garritson were cross-examined by four defense attorneys, the trial court did attempt to restrict cumulative and repetitious examination. As Uhlir cross-examined both witnesses, there was no denial to Runge of his right to confrontation. The trial court's restriction of cross-examination, once the right is substantially exercised, is within its discretion. *Gordon v. United States,* 344 U.S. 414, 423, 73 S.Ct. 369, 97 L.Ed. 447 (1953).

This court thoroughly considered a virtually identical claim in the appeal of Runge's codefendant. *See United States v. Headid,* 565 F.2d 1029, 1031 (8th Cir. 1977). Like Headid, Runge has not demonstrated prejudice. No specifics are given on what further cross-examination would have produced, although Runge's brief implies more information on undercover activities of Jansen and Garritson would have been revealed. We conclude the trial court did not abuse its discretion.

**H.** *Error in Failing to Admonish Jury to Disregard Implications in Testimony and Closing Argument that Runge Threatened Witnesses.*

 It is impossible to ascertain whether the prosecution argued to the jury that Runge threatened witnesses, since the arguments were not recorded.[3] Since no request for a limiting or cautionary instruction was made, the question is whether failure to give one constituted plain error. Fed.R. Cr.P. 30. Although the evidence of threats suggests an improper basis of conviction and was vague and speculative in that a perpetrator could not be identified, ironically the latter fact lessened the prejudice to Runge. Uhlir elicited testimony that one caller's voice did not sound similar to Runge's, and the jury could have concluded that someone else made the threats. We conclude, in light of the overwhelming evidence of guilt, that no prejudice has been demonstrated.

**I.** *Severance.*

 Runge has filed a supplemental pro se "Statement of Issues." The government has filed a motion to strike this pleading. It argues an appellant who requests appointed counsel is bound by that counsel's presentation of issues and may not also represent himself by raising additional issues pro se. We deny the motion to strike. Having considered the issues raised, only one additional claim merits discussion: denial of repeated motions for severance. Uhlir did not so move, but attorneys for codefendants did and renewed their motions at the close of the evidence. The trial court ruled that all the motions applied to all defendants. Runge argues codefendants' counsel's questions concerning threats and the fact that he carried a pistol were prejudicial to him. Because the prosecution tied the threats to him in closing argument, he argues that severance was mandatory.

These grounds were not presented to the district court at commencement of trial in support of motions to sever. At the close of trial it might have been asserted as grounds for mistrial, if clear prejudice to Runge could have been shown. However, no motion was made.

 Persons involved in a single conspiracy should ordinarily be tried together. *United States v. Starr,* 584 F.2d 235, 238 (8th Cir. 1978), *petition for cert. filed,* 47 U.S.L.W. 3318 (U.S. Oct. 30, 1978) (No. 78–

---

**3.** Uhlir did move for mistrial after the arguments, on the ground that there was an inference of threats by Runge in the prosecutor's final argument. The motion was denied.

722), *quoting United States v. Rochon,* 575 F.2d 191, 197 (8th Cir. 1978). A clear abuse of discretion must be shown for reversal of a district court's denial of a motion to sever. *Id.* Since neither the vague and speculative character of the threat testimony, nor the fact that codefendant testimony concerning threats might be linked to Runge, were presented to the court as grounds for severance, we find denial of the motion was not an abuse of discretion. We thus conclude there exists no prejudicial error warranting reversal of the conviction on direct appeal.

*The Motion for New Trial.*

Runge's supplemental motion for new trial lists nine grounds, only two of which merit consideration. It is alleged that:

1. David Garritson and Danvers Jansen, accomplices and chief witnesses against Runge, perjured themselves by denying that they had worked for the South Dakota Division of Criminal Investigation (S.D.D.C.I.) or the F.B.I., when both worked for Agent John Kotman of the S.D.D.C.I. and Jansen collaborated with Agent Steve Brannon of the F.B.I.

2. F.B.I. agent Brannon coerced or persuaded government rebuttal witness Cindy Jorgenson to give false testimony. Jorgenson perjured herself by stating she had not talked to the government before testifying, when in fact Brannon had visited her, told her what she was to say, and the F.B.I. paid her motel expenses.

The district court found these allegations to be serious, and, in particular, found the claims of perjury by prosecution witnesses and coercion of false testimony troublesome. The court stated this evidence appeared to have been discovered after trial and after a diligent defense, and might be material. However, it found that even if true, the allegations would be "merely cumulative or impeaching," and "given the nature and tenor of the trial testimony, could not be said to be such as warrant an acquittal on retrial." We agree.

Unlike the stricter standard of materiality used in new trial motions based on discovery of new evidence or failure of the prosecution to disclose favorable evidence, knowing use of perjured testimony requires that a conviction be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Where the use of known perjury involves prosecutorial misconduct, it constitutes "corruption of the truth-seeking function of the trial process." *United States v. Agurs, supra,* 427 U.S. at 104, 96 S.Ct. at 2397. The government may be responsible even if the prosecutor did not actually know the testimony was perjured, but should have known, *id.* at 103, 96 S.Ct. 2392; *see Giglio v. United States, supra,* 405 U.S. at 154, 92 S.Ct. 763, or if he or she did not elicit false testimony, but allowed it to go uncorrected when it appeared. *Id.* at 153, 92 S.Ct. 763, *quoting Napue v. United States,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). Even false testimony which merely impeaches a witness' credibility may require a new trial. *Giglio v. United States, supra,* 405 U.S. at 154, 92 S.Ct. 763; *Napue v. United States, supra,* 360 U.S. at 269, 79 S.Ct. 1173.

A. The first allegation is that Garritson and Jansen worked in an undercover capacity for the S.D.D.C.I. and the F.B.I. Runge states that the attorney who represented him on the South Dakota charges, Breit, discovered both men were working for the S.D.D.C.I. at the time of the offense and collaborated with agent Kotman for one to three years. He refers to testimony of both men before a state grand jury and gives the grand jury transcript, the Attorney General of South Dakota and two S.D.D.C.I. agents as sources of verification. No affidavit from Breit was filed.

Even assuming Garritson and Jansen perjured themselves in denying involvement with the S.D.D.C.I., Runge has not alleged that the prosecutor or his office knew or should have known that the testimony was

false. Although the S.D.D.C.I. officers are state government agents, no facts are alleged to show that the federal prosecutor should have known about the witnesses' prior undercover work for the state agency.

Nor can we say, considering the alleged perjury in the absence of governmental failure to disclose, that without the false testimony the jury "might have reached a different [result]." *See Larrison v. United States*, 24 F.2d 82, 87 (7th Cir. 1928). Runge's attorney vigorously attacked Jansen's and Garritson's credibility through cross-examination on their prior convictions, plea agreements regarding the instant offense, and whether they did undercover work. The jury was instructed to receive their testimony with great caution, and other evidence corroborated it.

The allegation that Jansen perjured himself in denying he worked for the F.B.I. is unsupported by any factual allegations. Thus, neither allegation entitled Runge to a hearing.

B. A similar allegation of perjury relates to the charge that F.B.I. agent Brannon coerced government rebuttal witness Cindy Jorgenson to give false testimony, and that she perjured herself by stating she had not discussed her testimony with anyone and was testifying by her own choice, when in fact Brannon told her what to say and had her stay at a motel at F.B.I. expense. This allegation is supported by Exhibit C, a letter from Jorgenson to her boyfriend, John Garritson. The letter *does* indicate Brannon visited her and told her to testify that Runge was present at conversations she overheard between Jansen and David Garritson concerning machines they had stolen. Runge also quotes language, in another alleged letter not attached, which implies Brannon arranged her motel stay.

Jorgenson did answer "no" on cross-examination to the question of "Did the government request you to testify here today?" She was then asked "You just walked in the door?" and she answered "Yes." This appears to be perjury if she understood Brannon was a government agent, since she states in Exhibit C that Brannon asked her to testify, and to testify to rather specific facts. Runge does not allege the prosecutor knew of Brannon's behavior, but states that Brannon was present in the courtroom and should have informed the prosecutor that Jorgenson perjured herself.[4] It does appear probable that the prosecutor would know she had been asked to testify, or at least should have known.

However, while Brannon's behavior would perhaps reveal overzealous investigation, there is not a reasonable likelihood that the perjury Jorgenson committed and its reflection on her credibility would have affected the jury's judgment. She was a minor witness and added nothing to the government's case, largely because Runge's attorney's objection to her testimony concerning conversations about stolen machinery was sustained. She did describe Runge's physical appearance at the time of the crime (the third man was bearded and long haired, and Runge claimed he was not), but other witnesses had also. She also stated that Runge asked John Garritson to help him in his defense. However, this did not necessarily impeach John Garritson's testimony, and he was cross-examined about possible motives for perjuring himself.

Thus, although this allegation is serious in that a government agent may have been overzealous in obtaining testimony and Jorgenson may have perjured herself, we conclude there does not otherwise appear to be a reasonable likelihood, in the light of the entire record, that the perjury would have affected the jury's judgment.

We conclude that the district court did not err in overruling the defendant's motion for new trial on the basis of newly discovered evidence.

The judgment is affirmed.

HEANEY, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's rejection of the contentions made by Runge in his direct

---

4. This seems doubtful, since Brannon testified and the witnesses were sequestered.

appeal. I dissent, however, from the majority's summary denial of Runge's motion for a new trial. In my view, resolution of the factual issues which are raised by Runge's allegations of perjury by government witnesses and of coercion of false testimony by a government agent, and application of the appropriate standard for the granting of a new trial in this context, should be made in the first instance by the District Court.

When considering Runge's motion below, the District Court applied the test generally applicable to motions for a new trial under Fed.R.Crim.P. 33 on the basis of newly discovered evidence. Under this test, before a new trial may be granted, the movant must show that the evidence is newly discovered, that the movant used diligence in discovering the facts at the time of trial, that the evidence is material to issues at the trial, and that the evidence is likely to produce an acquittal on retrial (must not be merely cumulative or impeaching). *United States v. Carter*, 549 F.2d 1164, 1165 (8th Cir.), *cert. denied*, 430 U.S. 974, 97 S.Ct. 1665, 52 L.Ed.2d 369 (1977); *United States v. Kahn*, 472 F.2d 272, 287 (2d Cir.), *cert. denied*, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973). The court held that although the evidence was discovered after trial, was discovered after a diligent defense and may be material, a new trial was not required because the allegations, if true, would be merely cumulative or impeaching and, given the nature of other trial testimony, would not be likely to produce an acquittal on retrial.

By applying the traditional test for new trial motions based on newly discovered evidence, the District Court overlooked the fact that where, as here, the movant's allegations involve an allegation of corruption of the truth-seeking function of the trial process, a lesser showing of materiality is required. *See United States v. Agurs*, 427 U.S. 97, 103–104, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The test to be used in such cases is set out by the majority. The movant need not show that the newly discovered evidence would probably produce an acquittal, but only that there is any reasonable likelihood that the false testimony could

have affected the judgment of the jury. *Id.* at 103, 96 S.Ct. 2392; *Ray v. United States*, 588 F.2d 601 at 602–603 (8th Cir., 1978). This rule does not lose force because the perjury reflects only upon the credibility of a witness. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 267–270, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

Although the majority implicitly recognizes that the District Court evaluated Runge's allegations against an incorrect legal standard, it does not remand the issue to the District Court because it finds that his allegations either lack sufficient specificity or that the testimony of the witnesses which he claims was perjured was of such low materiality that there is no chance that the District Court could find that it meets even the lesser test. I disagree with this characterization of Runge's claims.

Runge makes two serious allegations of perjury by David Garritson and Danvers Jansen, the prosecution's two principal witnesses against him. First, Runge alleges that Garritson and Jansen perjured themselves by denying that they were working in an undercover capacity, when they had in fact been working with both state and federal authorities. I agree with the majority that Runge has failed to allege sufficient facts from which it can be inferred that federal authorities were aware, or should have been aware, of undercover work done by these witnesses for the State of South Dakota. I disagree, however, that Runge has made insufficient allegations to support his contention that Jansen worked for the F.B.I. Runge alleges that Jansen has been working with the F.B.I., specifically with Agent Brannon, "for quite some time." He further alleges that this may be verified by Agent Brannon and by Agent Canten, both of Sioux Falls, South Dakota. I believe that this allegation is sufficiently specific to warrant consideration of its merits.

Runge also alleges that the prosecution elicited false testimony from Garritson and Jansen that they had not been in communi-

cation with each other prior to trial, when there is evidence not only that they were in communication, but that the FBI facilitated this communication.[1] Runge claims that through the post-trial investigative efforts of codefendant Headid and his attorney, testimony is now available from two trustees of the Woodbury County Jail in Sioux City, Iowa, that Garritson and Jansen passed written communications to each other while incarcerated there and that they were in fact put together to discuss the case by F.B.I. agents during the trial. Runge also submits a copy of a letter purportedly written by Jansen to Garritson after the trial, which indicates prior collaboration. It appears from the record that both Garritson and Jansen were asked by the prosecution whether they had been in prior communication, and both denied it.[2] Jansen reiterated this position during cross-examination.[3] If, as Runge alleges, these witnesses had in fact been brought together to discuss their

testimony prior to or during trial by the F.B.I., the prosecution is chargeable with this knowledge and any use by the prosecution of this perjured testimony involves it in a corruption of the truth-seeking function of the trial process. *See United States v. Agurs, supra,* 427 U.S. at 104, 96 S.Ct. 2392; *United States v. Sutton,* 542 F.2d 1239, 1241 n.2 (4th Cir. 1976). *See also Giglio v. United States, supra,* 405 U.S. at 154, 92 S.Ct. 763.

Runge also alleges that Cindy Jorgenson, another government witness, perjured herself when she testified that Runge was present during a conversation between Jansen and Garritson in early April 1976, when the future theft of machines was discussed.[4] Runge alleges that this perjury by Jorgenson, as well as her perjury that she had not been in prior contact with any law enforcement authorities and that she drove to Sioux City on her own initiative, was at the

1. Runge also alleges that the government stressed the similarity of the two witnesses' testimony during closing argument, and the fact that they had not been in communication with each other since May 5, 1976. Since the testimony of Garritson and Jansen constituted the government's principal case against Runge, particularly with regard to Runge's knowledge that the machinery, which he allegedly helped transport, was stolen, such an approach by the prosecution during closing argument does not seem improbable. However, since recording of the closing arguments was waived by counsel, it is impossible to verify Runge's allegation on the basis of the record before us.

2. Q [Keith Van Dorn, Assistant United States Attorney]: When was the last time you talked with Danvers Jansen?
 A [David Garritson]: May 5, 1976.
 * * * * * *
 Q [Van Dorn]: Have you discussed that matter that you are testifying about today with David Garritsen [sic] recently?
 A [Danvers Jansen]: I haven't seen him since he was arrested one day not too long after all this happened. I haven't seen him since then except he walked in the courtroom or jail once; Sioux City jail.
 Trial Transcript, February 1, 1977 at 163; Trial Transcript, February 2, 1977, at 424.

3. Q [Golby Uhlir, attorney for Daniel Runge]. Did you receive communications from Mr. Garritsen [sic] by way of his brother Doug Garritsen [sic] while you were in the Minnehaha County jail?

A [Danvers Jansen]. Receive communications from him? No.
Q. Did Doug tell you that Dave asked this or that?
A. No. He was angry with me I gathered. I never heard a thing from David Garritsen [sic] since he got locked up.
Trial Transcript, February 2, 1977, at 445.

4. The substance of this testimony is as follows:
Q [Keith Van Dorn, Assistant United States Attorney]. Did Mr. Garritsen [sic] ever mention to you his involvement in the theft of some tractors?
A [Cindy Jorgenson]. Yes.
Q. And where were you when this conversation took place?
A. At Danny Jansen's house.
Q. In whose presence did this conversation take place?
A. Who all were there?
Q. Yes.
A. Danny Jansen, Dave Garritsen [sic] and Dan Runge.
 * * * * * *
Q. When did these conversations take place?
A. About the first part of April.
Q. Could you tell the members of the jury the nature of those conversations?
A. Talking about getting some machinery—
[Objection of the defense was then sustained.]
Trial Transcript, February 3, 1977, at pages 778–779.

instigation of Agent Brannon.[5] Although the majority agrees that Jorgenson appears to have perjured herself at least to some extent, it concludes that no further investigation into this issue is required since there does not appear to be a reasonable likelihood that knowledge of her perjury would have affected the jury's judgment. Although Jorgenson's testimony was less significant than that of Garritson and Jansen, it was still of importance since she was the only other witness whose testimony directly supported the government's contention that Runge participated in the transportation of the machinery with knowledge that it was stolen. Under these circumstances, we cannot say that the District Court could not conclude that knowledge of Jorgenson's perjury might have affected the judgment of the jury.

While I would not favor the granting of a new trial by this Court on the basis of the record as it now stands, I believe that Runge's allegations of governmental misconduct are sufficiently serious and sufficiently specific to cross the rather low threshold entitling him to the development of an evidentiary record on his claims before the District Court. *See DeMarco v. United States*, 415 U.S. 449, 94 S.Ct. 1185, 39 L.Ed.2d 501 (1974); *United States v. Keogh*, 391 F.2d 138, 142 (2d Cir. 1968). The District Court may make its factual determinations either on the basis of affidavits submitted to that court or after an evidentiary hearing has been held. *See United States v. Pitts*, 508 F.2d 1237, 1241 (8th Cir. 1974), *cert. denied*, 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 455 (1975); *United States v. Persico*, 339 F.Supp. 1077, 1083–1084 (E.D.N.Y.1972), *aff'd*, 467 F.2d 485 (2d Cir. 1972), *cert. denied*, 410 U.S. 946, 93 S.Ct. 1360, 35 L.Ed.2d 613 (1973). The District Court should then decide, on the basis of that record and on the basis of its knowledge of prior trial testimony, whether a new trial is required under the test set out above. In my view, such a thorough inquiry into Runge's allegations is necessary in order to insure that respect for the integrity of the judicial system is maintained.

---

5. In support of this allegation, Runge submits a copy of a letter purportedly written by Jorgenson to her boyfriend, John Garritson, which states in part:

> That Steve Branan [sic] from the F.B.I. came and talked to me. He said Runge was setting you up and he wouldn't charge me with accessory if I say what he told me to say and you wouldn't either be charged. * * *

All I said was I heard D.J. and Dave talking about some machines they stole and he said to say Runge was there too. I told him I would have to talk to you first, he said we all could visit together. I just don't want to see us get into any trouble. I sure hope he knows what he's doing, after all he's the F.B.I. Just wish he'd leave us alone.