**UNITED STATES of America, Plaintiff,**

v.

**Thomas W. TIERNEY, Defendant.**

**No. 87–00007–01–CR–W–6.**

United States District Court,
W.D. Missouri, W.D.

Aug. 30, 1989.

John Osgood, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

Willard B. Bunch, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

SACHS, District Judge.

This matter is before the court on a motion for reconsideration of the court's August 1, 1989, denial of defendant's second motion for new trial. Appellate review of the 1987 conviction has been terminated so that the court could consider the motion for new trial, based on a contention there is newly discovered evidence requiring such action.

As reflected in the August 1 ruling, the court rejected a claim that the *home* telephone records of witness Walker, newly discovered, require a new trial. Defendant contended the records disprove, and tend to show perjury in, the testimony of several witnesses who told the jury of a dramatic call to Tierney on the evening of December 29, 1982, in which Tierney allegedly caused witness Liscom, an engineer, to falsely certify completion of ethanol plants that would be adequate under the tax laws for claiming credits in 1982.

The August 1 opinion shows that both the Government and the court treated the telephone records as nondispositive, in light of the absence of records disproving a call made at or charged to the *office* of witness Walker. Doc. 200, page 6. A motion for reconsideration was filed August 11, and supplemented on August 17. The court

need deal only with the August 17 showing that telephone records, subpoenaed on August 14, now disclose no pertinent calls from Walker's office on December 29, 1982. On the assumption that this new material does indeed show it is improbable from all four pertinent telephone records that defendant had the conference call testified to by witnesses Walker and Liscom (with some circumstantial recollection of one or two other witnesses) the court scheduled oral argument.

Timeliness of the Newly Discovered Evidence

Material discovered some two years after trial must obviously be critically examined for timeliness, and the issue of due diligence by defendant. *United States v. Begnaud*, 848 F.2d 111, 113 (8th Cir.1988). Without fully rehearsing the record, it would appear, as suggested in the August 18 order, that it is inappropriate to charge the defendant with undue delay, in light of (a) assurances from telephone company officials and from the prosecution that such records were no longer in existence, and (b) the apparent failure of the Government, which would have had an almost equal interest in the telephone records, to discover their existence until located by defendant.

Defendant reasonably did not believe the records existed. When the court and the Government placed extraordinary focus on the *office* records defendant did subpoena what he had believed were non-existent records. Present information is that the records were retained contrary to normal policy as the result of the 1984 collapse of the Midwestern Companies and the ensuing controversy.[1]

Under the circumstances I find there was due diligence on defendant's part in locating the December 29, 1982, office telephone records.

---

1. Defendant renews his suspicions that there was Governmental suppression of evidence favorable to him and collected by it. There is no showing, however, even assuming some Governmental investigator suggested or requested retention of records, that the records, or copies thereof, were reviewed or obtained. They have not been located in Government files. This ruling cannot be delayed for further investigation of events five years ago. I cannot, on present information, find that Governmental misconduct tilts the balance otherwise struck in response to the motion for reconsideration. The most I can reasonably do for defendant is to disregard the untimeliness issue, which I will do for purposes of this ruling.

Significance of the Newly Discovered Evidence

Defendant denies he participated in a critical telephone call on the evening of December 29; Walker says Tierney did participate, but only to approve language added as a "glossary" to the certificate by Liscom; Liscom says Tierney did participate, and was the author of the language. The court has previously opined that the legalistic language used could reasonably be attributed to Tierney and certainly not to an engineer unfamiliar with tax law or accounting concepts.[2] Walker and Liscom have given different stories at different times. Under the circumstances, I believe the defendant's possession of all the most likely telephone records makes it quite improbable that a jury, on retrial, would accept the Walker or Liscom testimony on this subject in the scenario presented at trial.[3]

My supposition at this point is that on any retrial the Government might well drop the entire theory of Tierney fabricating the misleading portions of the Liscom certificate. The issue has become too elusive. If so, the Government would have lost what seemed to me the most dramatic proof of Tierney's guilt on the tax charge.[4] I do not belittle the effect of testimony that I described as dramatic in my presentence denial of a new trial. Doc. 132, page 4, December 18, 1987. There was, however, almost equally dramatic testimony that Tierney insisted in January 1983 on paying a "completion bonus," when Walker was resistant, and evidence that Tierney told Walker never to acknowledge that the plants were incomplete at year's end. While Tierney also places a different light on this conversation (referred to as the "airport conversation"), a jury could treat it as important evidence of Tierney's determination to go through with a fraudulent date-of-completion scheme, regardless of the facts. This incident shares dramatic impact with the Liscom certificate incident, and would remain on retrial available to the Government. There is also evidence of Tierney's hand in mischaracterizing completion work in 1983 as warranty work. These matters all suffer a problem of indirect, remote or nonexistent relationship with the preparation of the challenged tax returns by the accountant Wright, but they present circumstantial evidence of intent.

Assuming the Government has been sufficiently burned (by the telephone records) to avoid using the Liscom certificate on retrial, it would doubtless rely most seriously on the bland and general testimony of Wright that Tierney gave him direct encouragement to falsify the tax returns (Tr. 942–5). Walker confirmed this testi-

---

2. As summarized in the Government's Brief on Appeal, p. 10 n. 6, the term "'in place'" was defined as "available to be used," which, Liscom was allegedly orally informed, "encompassed those parts not just on the plant site, but also in the general area of the site. (Tr. 1473)." The term "'operational'" was defined as "'of the correct size and constructions for the specific use and either new or reconditioned as new' (Tr. 1474; G.Exs. 54–57)". The phrase "'capacity has been exhibited'" was allegedly explained to mean that "based on sound engineering principles, the plant should meet or exceed design rates. (Tr. 1474–1475)."

3. Short of perjury or gross misrecollection, it is entirely conceivable that Tierney did, as Walker and Liscom contend, have a hand in the alteration of the certificate that he drafted. For example, it is more than possible that Walker and Tierney discussed earlier that Liscom might balk at signing the certificate drafted by Tierney, and discussed the fatal "glossary" as a back-up position if there were trouble. Walker could then have conveyed the language to Liscom, naming Tierney as the source. Recollections long after the event could easily have telescoped the incident in accordance with the trial testimony. I doubt, however, that the Government would, on retrial, have the nerve to seek to develop such a story, almost seven years after the events in question. The true facts regarding the glossary will doubtless remain shrouded in mystery.

4. I am aware that Tierney has at least two fall-back positions of his own: even if he were somehow responsible for the glossary he says it is technically correct as a matter of tax law. Further, he contends, and I have been troubled, that there is no showing that the certificate had any direct relationship to the tax returns for 1982, other than the remote possibility that the certificate would some day be used to support challenged returns. As will be further discussed, while the December 29 call was the most dramatic proof offered by the Government there was more direct proof on which the Government could rest its case on retrial.

mony by hearsay, to which there was no objection (Tr. 286–7); on retrial I would suppose the Walker testimony would be objected to as hearsay. It might, however, be admitted as a prior consistent statement by Wright, if Wright's credibility comes under attack. Rule 801(d)(1), F.R.Evid.

As will be discussed, the impact of the newly discovered evidence must, in order to authorize a new trial, be evaluated as either (1) "probably" signifying that there would be an acquittal on retrial if the court concludes the trial was tainted by perjury, or (2) showing there is "any reasonable likelihood" that "false testimony could have affected the judgment of the jury." *See United States v. Runge*, 593 F.2d 66 (8th Cir.1979), *cert. denied*, 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979). These are alternative tests, supported by different lines of authority, discussed below. Recognizing that my judgment of the chances of acquittal must be presented with some diffidence, it may be helpful to the Court of Appeals to specify that I believe defendant had no more than a 10% chance of acquittal on the tax charges, when there was evidence of a chorus of testimony about his role in the alteration of the Liscom certificate. If the Government were deprived of that testimony, as the result of the newly discovered evidence, I believe defendant's chance of an acquittal might rise to about 30%. While this would satisfy the second test, assuming perjury, I do not believe that all the evidence available, but concentrating on the Wright testimony, could lower the chances of conviction below 50%, as required under the first test.

Probability of Acquittal as Test for New Trial

■ Newly discovered evidence will not ordinarily justify setting aside a conviction and scheduling a new trial unless the new evidence will likely result in an acquittal. *United States v. Begnaud, supra.* This is clearly not the test when the Government has knowingly or perhaps negligently or recklessly used perjured testimony. *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). On the other hand, innocent use of perjured testimony is treated, in some circuits, like any other new trial issue, and requires a finding that exclusion of the evidence will probably result in an acquittal. *United States v. Krasny*, 607 F.2d 840, 844–5 (9th Cir.1979), *cert. denied*, 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 775 (1980); *United States v. Stofsky*, 527 F.2d 237, 246 (2d Cir.1975), *cert. denied*, 429 U.S. 819, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976). There is some authority, however, not adopted in the Eighth Circuit, that if a court is "reasonably well satisfied that the testimony given by a material witness is false" and that in the absence of such testimony "the jury might have reached a different conclusion" there should be a new trial absent some fault by the party seeking a new trial. *Larrison v. United States*, 24 F.2d 82 (7th Cir.1928) (emphasis added).[5]

Opinions in both the Third and Seventh Circuits appear to leave the *Larrison* rule in doubt. *United States v. Massac*, 867 F.2d 174, 178 (3rd Cir.1989); *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 832 n. 3 (7th Cir.1985). *See*, however, *United States v. Van Daal Wyk*, 840 F.2d 494, 500–1 (7th Cir.1988) (finding *Larrison* simply inapplicable). A recent Second Circuit decision emphatically supports *Stofsky* over *Larrison*. *Sanders v. Sullivan*, 863 F.2d 218, 226 (2d Cir.1988).

The Eighth Circuit has been counted as a circuit endorsing *Larrison*, as a result of the *Runge* case. 8A *Moore's Federal Practice* 33–38 n. 2. On the other hand, it has been counted as tacitly rejecting *Larrison*. 59 ALR Fed. 657, 661. A case subsequent to *Runge* more nearly rejects *Larrison* than *Runge* accepts it. *United States v. Conzemius*, 611 F.2d 695 (8th Cir.1979). Even if the *Larrison* rule could still be adopted in the Eighth Circuit, it seems more than likely that *Conzemius, Krasny* and *Stofsky* would be followed, in light of

---

5. The majority opinion in *United States v. Runge, supra,* appears to use *Larrison* hypothetically; I do not find it plainly adopted in *Runge.*

the current general tightening of criminal procedural rules against defendant claims.

In the present case, I find it unnecessary to endorse or reject the *Larrison* rule because I am not "reasonably well satisfied" that perjury has been committed in connection with the alleged conference telephone call on December 29, 1982.[6] Even if trial testimony as to the call was deeply flawed, at least in important aspects, as now seems probable, there could easily have been tangled recollections, confusion in reconstructing memories, miscommunication and the like that must be treated as innocent if mistaken testimony by the witnesses about events almost five years earlier. *See United States v. Van Daal Wyk, supra.*

Defendant's charge of perjury unduly discounts the vagaries of human recollection. Until transcripts and briefs were recently reviewed, for example, it was not my recollection that the only trial testimony attributing to Tierney the authorship of the glossary came from Liscom, rather than from both Liscom and Walker. The trial was only two years ago, and I have noted my fascination with the attribution of the glossary to Tierney, yet I had forgotten it came from only one witness.

I remain unconvinced that Liscom was the sole author of the glossary, as defendant apparently claims and the Walker testimony might indicate. Even defendant's theory that Walker had become sophisticated about the pertinent legal and accounting concepts would suggest that Liscom had some help from Missouri, on the night of December 29 or earlier. Quoting Tierney or using Tierney to discuss a change in the certificate language admittedly proposed by Tierney seems likely. Liscom could easily be confused, years after the fact, into thinking he had talked to Tierney on the telephone.

Treating Walker as the most likely perjurer is also not a satisfactory suggestion.

His extensive testimony about misconduct of himself and others was only marginally improved (from the Government's standpoint) by tepidly implicating Tierney in the December 29 call. If perjury were planned, why would Walker not simply adopt the more incriminating version of the conversation offered by Liscom? Any experienced trier of fact hears startling differences in testimony as to recollections of comparatively recent events. Unless perjury is far more prevalent than I believe it to be, one must accept the frequency of phantasizing as a phenomenon when witnesses are groping to recall past events.

Based on prior briefing, it is likely defendant will question my views as speculative. While defendant is of course entitled to an acquittal unless proof was adequate to satisfy a jury beyond a reasonable doubt, that does not signify that such a demanding level of proof is to be invoked in every phase of factfinding and analysis in a criminal case. The adequacy of the proof rests comfortably on the direct testimony of Wright and the considerable body of circumstantial evidence that remains in this case even if we eliminate the telephone call that supposedly occurred on the evening of December 29. The test under *Larrison* and *Van Daal Wyk* is whether I am now "reasonably well satisfied" the testimony about the call was perjured; based on the record, and using common sense and reason, I cannot so conclude.

The motion for reconsideration of the denial of a new trial is therefore DENIED.

---

**6.** For reasons previously stated in my August 1 ruling, I do not believe there was use of perjury that was known to the prosecution or that "should have been known" by the prosecutors. The new evidence does not change my conclusion in this very complex litigation where materials not in Government files could conceivably have been located and analyzed in the fashion now done by defendant.