**UNITED STATES of America, Appellee,**

v.

**Anthony Michael CARLONE, Appellant.**

**No. 79–1172.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1979.

Decided Aug. 9, 1979.

Rehearing Denied Sept. 6, 1979.

Joseph S. Friedberg, Minneapolis, Minn., argued, Ronald I. Meshbesher, Minneapolis, Minn., on brief, for appellant.

Richard E. Vosepka, Asst. U. S. Atty., Minneapolis, Minn., argued, Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., on brief, for appellee.

Before HEANEY and STEPHENSON, Circuit Judges, and MARKEY,* Chief Judge.

STEPHENSON, Circuit Judge.

Appellant-defendant Anthony Michael Carlone appeals from his conviction[1] by jury of three counts of assault on a federal officer, 18 U.S.C. §§ 111 & 1114, primarily contending that the district court[2] erred in denying his motion for a new trial based on newly discovered evidence. We affirm the district court.

On August 14 and 16, 1978, Carlone was under surveillance by the F.B.I. On August 14, Carlone was at his home and noticed a light blue vehicle being driven slowly past the house a couple of times. In the vehicle were Dag Sohlberg and Ben Patty, F.B.I. agents. Testimony at trial established that Carlone followed the agents for a short time in his vehicle; later the agents drove by Carlone's house again and Carlone ran after the car, yelling and asking the agents who they were. Carlone then jumped in his car and pursued the agents. The agents testified that Carlone followed them at a high rate of speed, swerving his vehicle toward the agents' car; the agents testified that in order to avoid being hit, it was necessary to brake their car and swerve, causing their car to leave the road. Carlone then apparently returned home.

On August 16, Sohlberg and agent Michael Neville resumed surveillance of Carlone's home and again drove by the house several times. The third time the car passed, Carlone placed himself in the street causing the agents to stop their car. The agents testified that Carlone yelled, approached the car, grabbed the door on the side of the car in which Sohlberg sat, raised a hammer Carlone had been using earlier, and yelled at the agents. Agent Neville testified that Neville then got out of the car and that Carlone ran around the car, confronting Neville with the hammer. Carlone only put the hammer down when faced with a drawn gun and verbal admonitions from Neville. Sohlberg testified that Carlone, then unarmed, asked who Neville was and was informed that Neville was an F.B.I. agent.

Carlone's description of the confrontation was different than that of the agents, but the jury verdict indicates that the jury chose to believe the F.B.I. agents' testimony. Basically, Carlone testified that Carlone never displayed the hammer in an assaultive manner; that the hammer was in Carlone's pocket at all times—until one of the agents ordered him to remove it; that Carlone did not cause the agents' car to swerve to avoid a collision; and that it was never Carlone's intention to harm or assault the agents, but merely to identify them and the purpose for their presence.[3]

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. Carlone was sentenced to one year and one day.

2. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

3. Carlone concedes that the federal law enforcement identities of the agents are jurisdictional requirements only and that 18 U.S.C. § 111 only "requires * * * an intent to assault, not an intent to assault a federal officer." *United States v. Feola*, 420 U.S. 671, 684, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975). Carlone does contend, however, that because unidenti-

fied agents' "conduct * * * might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property" and because the evidence here could show such an "honest mistake of fact [by Carlone] * * * not * * * consistent with criminal intent," there was not sufficient evidence to support the jury's verdicts. *Id.* at 686, 95 S.Ct. at 1264.

Carlone admits that the jury was properly instructed in regard to this matter. This court has carefully reviewed the transcript and concludes that there is sufficient evidence from which the jury could have concluded that Carlone intended to resort to immediate violence against the agents without justification; thus there was sufficient evidence from which the jury could conclude that Carlone had the crimi-

The primary basis for Carlone's motion for a new trial based on newly discovered evidence is the content of an affidavit submitted by William E. Sorg, brother-in-law of Carlone's brother Salvatore. In substance, Sorg maintains in his affidavit that two F.B.I. agents, Michael Hudak and David Keller, had employed Sorg as a paid informant for the F.B.I. Sorg states that he was asked to "plant" weapons on Carlone, plant narcotics on Carlone, and that the F.B.I. was doing a surveillance on Carlone "with the knowledge that Carlone had a quick temper and with the hope that * * the F.B.I. * * * could provoke him into doing something that would ultimately allow an arrest." Sorg also stated that agent Hudak told Sorg that the F.B.I. "had been successful in getting Mr. Carlone on 'a trumped-up charge', but that it was something anyway." The only time frame referred to in the affidavit was that Sorg was employed as a paid informant for the F.B.I. "from approximately September of 1977 until the present time." [4]

Agents Hudak and Keller admit in their affidavits that Sorg was a paid informant of the F.B.I., but basically deny the other statements Sorg attributes to them.

Joseph S. Friedberg, counsel for the defendant Carlone, states in his affidavit that he was not aware of the existence of William E. Sorg prior to the trial, nor was he aware of any of the information contained in Sorg's affidavit prior to trial. Friedberg states that the information was not discoverable by the use of due diligence prior to trial and that had such information been communicated to the jury during the trial, "it is probable that the jury would have reached a different verdict."

Carlone's first contention on appeal is that the trial court erred in using the standards set out in *United States v. Ward*, 544 F.2d 975, 977 (8th Cir. 1976) as the test in considering the motion for the new trial based on newly discovered evidence. Carlone contends that the proper standard to be used for this set of facts is that set out in *United States v. Runge*, 593 F.2d 66, 73 (8th Cir. 1979), a standard which places less of a burden on a defendant.

Carlone argues that had Sorg's statements been known at the time of trial, Carlone, who has maintained his innocence at all times by denying that he assaulted the agents, and who has, in essence, alleged that the charge on which he was brought to trial was a "trumped-up charge," would not have signed a stipulation which became part of the record. Carlone concedes in the stipulation that the F.B.I., at the time of

nal intent to do the acts specified in 18 U.S.C. § 111. *See United States v. Feola, supra.*

**4.** The strongest portion of the affidavit is as follows:

William E. Sorg being duly sworn upon oath deposes and says that:

\* \* \* \* \* \*

8. He was requested on numerous occasions by Special Agent Hudiak [sic] to plant weapons on or in the property of Anthony Carlone without the knowledge or consent of Anthony Carlone.

9. He was requested on numerous occasions by Special Agent Hudiak [sic] to plant narcotics on or in the property of Anthony Carlone without the knowledge or consent of Anthony Carlone.

10. These requests were made to your affiant after his communication to the Federal Bureau of Investigation that he was unable to get Carlone to deal with him in any unlawful enterprise.

11. Your affiant was told by Special Agent Hudiak [sic] on a number of occasions that surveillance was being run on Anthony Carlone calculated to allow Mr. Carlone to be aware that he was under surveillance.

12. Special Agent Hudiak [sic] told your affiant that the Federal Bureau of Investigation was doing that surveillance with the knowledge that Carlone had a quick temper and with the hope that they, the FBI, could provoke him into doing something that would ultimately allow an arrest.

13. Special Agent Hudiak [sic] ultimately told your affiant that his agency had been successful in getting Mr. Carlone on 'a trumped-up charge', but that it was something anyway."

\* \* \* \* \* \*

16. Special Agent Hudiak [sic] informed your affiant that Anthony Carlone was suspected of being the head of organized crime in Minnesota and that they would do and pay anything to get him. He stated that they would willingly resort to unlawful means to convict Anthony Carlone.

the incidents, was surveilling Carlone "for lawful reasons." Carlone's rationale at the time of trial was that such stipulation would be less damaging to Carlone than would be the government's response to any defense that Carlone might raise which would involve a defense of harassment by the F.B.I. agents.[5]

Carlone now contends that had Sorg's statements been known prior to trial, Sorg's testimony could have been used to cast direct doubts on the credibility of the government's main witnesses, agents Sohlberg and Neville.[6] Because credibility was a significant issue in the case and because Carlone's defense was, in essence, that the charge was "trumped-up," there is a "reasonable likelihood" that the evidence would have affected the judgment of the jury. *See*

United States v. Runge, supra, 593 F.2d at 73.

We initially note that the standard for motions for a new trial based on newly discovered evidence as articulated in *Ward*:

(1) the evidence must be in fact newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved, and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Ward, supra,* 544 F.2d at 977 *quoting from United States v. McColgin,* 535 F.2d 471, 476 (8th Cir.), *cert. denied,* 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d

5. The following is the relevant conversation between the parties as to the stipulation:

MR. VOSEPKA [Assistant U.S. Attorney]: Your Honor, in addition we have the aspect of the legitimacy of the agents involved and the fact that the agents are involved in the course of their duties. It is my supposition that the defense may very well wish to suggest that they were not properly in performance of their duties. Since it is a jurisdictional requirement for us to show the legitimacy of the performance of their duties, it would therefore be necessary to show, at least in general terms, what they were doing on that day and what the nature of the investigation was that they were involved in. I could anticipate, and that is why I wish to bring it up now, the possibility that the defense may have some objections to us being allowed to do that and I would like to discuss it now.

\* \* \* \* \* \*

THE COURT: \* \* \* What is your position with reference to what he brings up?

MR. MESHBESHER [Counsel for Defendant]: If he is going to ask the FBI if they are conducting an investigation for possible murder charges or heinous crimes, or any crime, I think it is improper because it is a mere investigation.

THE COURT: Are you willing to concede that they were in the performance of their official duties at or about the time alleged?

MR. MESHBESHER: I think we have to.

MR. FRIEDBERG [Counsel for Defendant]: Maybe you can tell us what it was they were investigating.

MR. VOSEPKA: Interstate transportation of stolen property—interstate transportation of stolen property and mail and wire fraud.

MR. FRIEDBERG: That would be bad for that testimony to come out.

\* \* \* \* \* \*

THE COURT: Is it enough for them to testify that they had Mr. Carlone under surveillance in connection with an investigation that they were conducting?

MR. VOSEPKA: Yes, Your Honor, but I think it is necessary, at least to some extent, we have to develop the nature of their investigation because if we were to have the agent get up and baldly say, yes, we were in the performance of our duty, that is totally rebuttable perhaps by what—

THE COURT: Let's find out.

MR. MESHBESHER: We wouldn't question that.

THE COURT: Is that an issue in the case?

MR. MESHBESHER: It won't be an issue.

MR. VOSEPKA: We would agree to stipulate that the agents were in the performance of their official duties and that then we could go on to the fact that they were surveilling Mr. Carlone as a portion of their official duties and official investigation. However I seek to elicit at this time if the Defense posture, either in cross examination or in its case, would be that they were acting ultra vires in any way?

MR. MESHBESHER: Absolutely not because then we will open up the other area and you will walk in.

6. The government also presented other witnesses, *i. e.,* two individuals who were working at Carlone's home on August 14 on an alarm system.

128 (1976). This is not the same as the standard articulated in *United States v. Runge, supra.* In *Runge* we noted that:

Unlike the stricter standard of materiality used in new trial motions based on discovery of new evidence or failure of the prosecution to disclose favorable evidence, knowing use of perjured testimony requires that a conviction be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."

*United States v. Runge, supra,* 593 F.2d at 73, *quoting from United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Assuming arguendo that the newly discovered evidence *might* affect the credibility of the agents' testimony, and consequently might have made Carlone's defense of harassment more believable, leading him not to make the stipulation, such newly discovered evidence does not create a factual situation that falls within the *Runge* standard. The line of cases from which the *Runge* standard, adopted by this court, arose includes *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); and *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). These cases all involve specific instances of prosecutorial misconduct, such as the use of "known perjured testimony," or other governmental corruption of the truth finding process resulting in a deprivation of fundamental due process. The newly discovered evidence in this case does not establish any specific claim that the F.B.I. agents who testified at Carlone's trial perjured themselves, nor does it establish any specific claim of governmental corruption concerning Carlone's trial and the incidents involved therein. Thus, the trial court did not err in using the *Ward* standards considering the facts in this case. Further, we cannot say that the trial court erred in its determination that the possible effect on credibility was not of such a nature that, on a new trial, it would "probably produce an acquittal." *United States v. Ward, supra.* Finally, we cannot say that the trial court abused its discretion in denying the motion without an evidentiary hearing.[7] In this regard, we note that the newly discovered evidence also failed to hold up to other standards expressed in *Ward*; the trial court found (1) although the affidavit might arguably indicate that the evidence was newly discovered as to counsel for the defendant, there was no showing that the evidence was newly discovered as to the defendant personally; (2) nothing was alleged in the affidavit from which the trial court could infer diligence on the part of the defendant specifically or on the part of defendant's counsel in attempting to obtain the evidence; (3) the affidavit indicates no specificity as to time or place; and (4) further, the allegations are made against two agents of the F.B.I., neither of whom was involved in the episode giving rise to this action and neither of whom testified at trial. Moreover, in regard to the issue of relevancy, the trial court found that even if the testimony of the agents involved in the newly discovered evidence was relevant, the probative value would be outweighed by the danger of confusion of the issues and misleading of the jury and hence, would not be admissible under Fed.R.Evid. 403.

Carlone made the choice of entering into the stipulation concerning the legitimacy of the F.B.I. surveillance based upon well-reasoned motives—to avoid the prejudicial effect of F.B.I. testimony as to why Carlone was being surveilled. *See* note 5 *supra.* Carlone attempts now, based upon the affidavit of Sorg, to gain a new trial and try a different approach to his defense. In order to do this, Carlone must meet the *Ward* standards; he has not.

The trial court is affirmed.

AFFIRMED.

---

7. *See generally United States v. Cardarella,* 588 F.2d 1204 (8th Cir. 1978).