**UNITED STATES of America, Plaintiff,**

v.

**Darrel L. BURKHEAD, Defendant.**

**No. 79–00115–01–CR–W–1.**

United States District Court,
W. D. Missouri, W. D.

June 6, 1980.

Sheryle Jeans, Edward D. Holmes, Sp. Agents, Dept. of Justice, Kansas City, Mo., for plaintiff.

Robert G. Duncan, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDERS DENYING DEFENDANT'S MOTION FOR NEW TRIAL ON THE GROUND OF NEWLY DISCOVERED EVIDENCE AND DIRECTING FURTHER PROCEEDINGS

JOHN W. OLIVER, Chief Judge.

### I.

This case now pends on defendant Darrel Burkhead's motion for new trial of Counts II through VI on the ground of newly discovered evidence.[1] That motion accurately alleged that since the trial of Counts II through VII, inclusive, in Division I of this Court, defendant Darrel Burkhead and defendant Garcia were tried and convicted on Count I of the above indictment in Division III of this Court in a trial of that count conducted before the Honorable Russell G. Clark, presiding judge of that Division.[2]

The pending motion alleged that government witnesses Thomas Steidle, Maurine Steidle, William Powell and Anthony Anderson testified in both trials and that prior to the second trial in Division III a transcript of the testimony of those and other witnesses as given in the first trial in Division I was prepared and available to counsel for the government, the government's witnesses, and defense counsel for use in the second trial. The pending motion specifically alleged that the testimony of Thomas Steidle in the second trial "differed substantially on numerous material facts from his sworn testimony in the first trial." In a similar manner, the pending motion alleged that Maurine Steidle testified in the second trial "in a materially different manner than was testified to" in the first trial. It was alleged that witness Anderson testified in the first trial that "he had obtained 6 ounces of cocaine from the defendant, for which he had not paid the defendant," in contrast with his testimony in the second trial "that he received only 4 ounces of cocaine that he did not pay the defendant for and that his testimony in [the first] trial was incorrect." No specific inconsistencies were alleged in regard to the testimony given by witness Powell.

In addition to the alleged differences in the testimony of the witnesses, which are set forth in detail, the pending motion also alleged in paragraph 6(c) that certain telephone company records, not offered in evidence in either trial, were not made available to defense counsel during pretrial or trial proceedings. In paragraph 6(i)(ii) it was alleged that a certain packet of TWA tickets, which were not introduced in evidence in either trial, were available to the government and were not made available to defense counsel during pretrial discovery.

---

1. Defendant Burkhead's earlier alternative motion for judgment of acquittal notwithstanding verdict or for new trial, filed March 23, 1980, was denied April 14, 1980, the same day the pending motion for new trial on the ground of newly discovered evidence was filed.

2. Judge Clark granted defendant Paula Burkhead's motion for severance at the close of all the evidence in the trial of Count I in Division III.

In paragraph 11 of the pending motion it is implicitly suggested that at the first trial the defendant did not have knowledge that witness Thomas Steidle had spoken to and had given a sworn statement to a reporter of the Kansas City Star-Times and that in that statement he had mentioned Ectore Garcia. In paragraph 17(a) of the pending motion it is alleged that the contents of a loan defendant Darrel Burkhead had obtained on his house on December 28, 1977, which was not introduced in evidence at either trial, had not been revealed to the defendant in pretrial discovery.

In paragraph 6(h) and in paragraph 21 of the pending motion, it is alleged that in the first trial Thomas Steidle did not testify concerning a loan that he and his wife had obtained in Miami, Florida, and that the loan to the Steidles was not revealed anywhere in the government's file made available to the defendant prior to trial. It was further alleged that the supporting documents for Exhibits 2, 9, 13 and other unidentified government exhibits, were in the possession of the government but were not made available to the defendant in pretrial discovery and that the defendant entered into the stipulation filed in the first trial "relying upon the good faith of the Government and on the belief that the Government's Exhibits would establish what the Government purported them to establish."

The basic thrust of defendant's pending motion is set forth in paragraphs 18, 19, 22 and 23 of the pending motion. Those paragraphs read as follows:

18. That the testimony upon which the verdicts of guilty against the defendant were returned in this case was, according to Thomas Steidle, Maurine Steidle, and Anthony Anderson, mistaken, incorrect or confused. That the conviction of the defendant should not stand where it was supported and secured by mistaken, or confused, or incorrect testimony on very material matters.

19. That had the defendant been aware of the discrepancies in the testimony, and the documents in direct conflict of the testimony of Thomas and Maurine Steidle during the trial before this Court, the defendant may well have secured acquittal at least on Counts V and VI. That the prejudicial effect of the introduction of that evidence mistaken and incorrect testimony flowed over and tainted the verdict of guilty on Counts II, III and IV; the evidence as to those Counts was not direct or overwhelming but when it was shown that the defendant had traveled or caused the travel to secure cocaine it established that the defendant had cocaine and made the evidence on Counts II, III and IV more believable.

\* \* \* \* \* \*

22. That the evidence set out above was discovered since the trial in this case and as a result of the trial on Count I which commenced March 31 and ended April 4, 1980.

23. That the newly discovered evidence is not merely impeaching but is direct evidence of the innocence of the defendant.

## II.

The defendant alleged in paragraph 20 of his motion that a transcript of the testimony given in the second trial had been ordered but that it had not been prepared at the time of the filing of the pending motion. The defendant accordingly requested that the Court delay ruling the pending motion until it had an opportunity to review the transcript of the second trial.

The Court advised counsel that it would do so and, consistent with a practice established as early as *United States v. La Rocca*, 219 F.Supp. 53 (W.D.Mo.1963), affirmed 337 F.2d 39 (8th Cir. 1964), the Court made appropriate inquiry as to whether either party desired a plenary evidentiary hearing in connection with the pending motion and, particularly, whether the defendant wished to have any evidentiary data before the Court in connection with that motion other than the transcript of the second trial. Counsel for defendant Burkhead wrote the Court a letter on May 13, 1980 in which he suggested that in addition to having the

transcript of the second trial a part of the record upon which the pending motion would be considered, he wanted to be certain that the record would also reflect that neither he, as defense counsel in the first trial, nor defendant Burkhead, at the time of the first trial, were aware "of the facts that were brought out during the conspiracy trial." We have, of course, considered the pending motion on the factual assumption that neither defense counsel nor defendant Burkhead could possibly have been aware of the facts that were later brought out at the second trial. Any finding that either could have known of what would occur in the future would be clearly erroneous.

Counsel for the defendant advised the Court in his May 13, 1980 letter that no additional evidentiary hearing was requested on behalf of the defendant to establish "other matters referred to in my motion" other than to have the record show that the transcript of the second trial would be before the Court in its consideration of the pending motion for new trial. Counsel for the government has agreed that the Court could and should take judicial notice of the transcript of the proceedings in the second trial as may be designated by counsel for the defendant.

On May 14, 1980 counsel for the defendant delivered four volumes of the transcript of the proceedings in the second trial: volume I containing pages 63 through 79 of the transcript; volume III, pages 79A through page 397; volume IV, pages 368 through 685; and volume V, pages 686 to 860. The Court states for the record that judicial notice has been taken of the transcript of the second trial pursuant to Rule 201 of the Rules of Evidence and that it has read and considered the entire transcript of the second trial furnished it in its determination of defendant's pending motion. The transcript of the second trial in Division III shall therefore be considered as a part of the record in the first case tried in Division I.

### III.

The government filed a short response in opposition to the defendant's pending motion. That response stated that all documents in the government's possession, including but not limited to the records obtained from the telephone company, from TWA, and all records in its possession which related to the Burkhead loan, were maintained in a single cardboard box, the entire contents of which were made available and physically presented to defendant's representatives on each of the occasions they appeared for pretrial discovery in connection with both trials.

In regard to defendant's claim that the defendant Darrel Burkhead did not know that witness Thomas Steidle had talked with a reporter for the Kansas City Star-Times, the government directed attention to the transcript of the first trial which clearly shows that counsel for the defendant was fully advised in regard to that subject at the first trial.[3] In regard to the

---

**3.** The government's response cites pages 37–38 and 51 of the transcript of Thomas Steidle's grand jury testimony, which was disclosed to the defendant prior to the first trial. The following testimony on cross-examination was given by witness Thomas Steidle on pages 102 to 107 of the transcript of the proceedings of the first trial:

Q. In fact, didn't you first—the first thing that led you to go to the DEA office, didn't you call the defendant and speak to him and his wife and try to extort them out of money to keep you from going to the newspaper?

. . .

A. I made a phone call to them, yes, sir.

Q. Didn't you tell them, "either send me some money or I'll go to the newspaper?"

A. Yes, sir.

Q. And didn't they tell you, "You've got nothing to tell on us. Go ahead?"

A. That's correct. . . .

Q. Well, O.K., when did you go to this reporter from the Kansas City Star?

A. In September. . . .

Q. —1978, and you told him a whole lot of things, isn't that right?

A. That's correct, sir.

Q. And on one occasion they had the lawyer for the Star in there and one of the editors and the reporter and a court reporter, just like this lady, isn't that correct?

A. That's correct.

Miami loan to the Steidles, government counsel stated in their response that they recollected that there was cross-examination in connection with that loan in both trials. Although the government did not direct our attention to any pages of the transcript of either trial, defendant's cross-examination of witness Maurine Steidle establishes that counsel for the defendant knew about and cross-examined that witness about the Steidles' Miami loan.[4]

Although paragraph 21 of the pending motion alleged that the defendant Burkhead entered into the stipulation filed in the first trial "relying on the good faith of the Government and on the belief that the Government's Exhibits would establish what the Government purported them to establish" and further alleged that "the supporting documents [for various exhibits] were within the possession of the Government and were not available to the defendant in pretrial discovery," the pending motion did not allege nor was there any effort made to prove that the government acted in bad faith or that the supporting documents to exhibits which were stipulated were in fact ever in the possession of the govern-

ment. Indeed, defendant has not pleaded nor has he attempted to prove that the supporting documents were ever in existence so that they could have been made available to the defendant Burkhead during pretrial discovery. We find that defendant Burkhead's implicit attack upon the stipulation entered into by the parties at the first trial to be untenable as a matter of pleading and as totally unsupported by any factual basis.

The defendant has elected not to put in dispute any of the statements of fact made in the government's response in regard to the telephone company records, the TWA records, witness Steidle's contact with a reporter for the Kansas City Star-Times, or the details concerning either the Burkhead loan or the Steidle loan. Nor has the defendant attempted to plead or to prove any factual circumstance to support his implicit attack on the validity of the stipulation. Defendant declined this Court's invitation to conduct a full plenary evidentiary hearing and did not even file a reply to the government's response in opposition to the pending motion.

Q. And you gave your statement, and it was under oath. You swore to it, isn't that correct?

A. That's correct.

Q. And that was in September of 1978?

A. Yes, sir. . . .

Q. Let me ask you if you did not tell the Grand Jury that the reason you went to the Kansas City Star was because you were teed off at Darrel?

A. That's correct, sir. . . .

Q. And you thought that by exposing him through the newspaper that he would lose his massage parlor and then he would go down the tube?

A. That's correct, sir.

4. The following appears on pages 206 to 210 of the transcript of the first trial:

Q. How much did your husband tell you he was putting in to buy cocaine?

A. Well, we had gotten $16,000, I think, from the loan and that was the original investment that we made. . . .

Q. From being involved in this cocaine traffic, you lost your house, you lost your car, your credit and your insurance, right? Bad deal?

A. Right.

Q. Made you mad at Darrel, didn't it?

A. Uh-huh. . . . .

Q. All right. The reason that Tom went to the Kansas City Star was to get back at Darrel, isn't that right?

A. Yes.

Q. And that is the reason he went to the DEA, was to get back at Darrel, isn't that right?

A. If you want to let me tell the other reason—

Q. Well, wasn't that the reason, to get back at Darrel?

A. One of them.

Q. And it was a $16,000 loan that you got on your house?

A. Yes. . . .

Q. When did you take that loan out?

A. When did what?

Q. When did you take that loan out?

A. Now that I think about it—we went down there, and it was over the holidays so we couldn't get it. We were supposed to get it before New Year's Eve, but it didn't go through until February or something like that.

Q. So when you took the loan out, that wasn't for the purpose of investing that money in cocaine?

A. Oh, yes, it was.

So far as the factual circumstances are concerned, it is clear that defendant Burkhead has not pleaded nor has he presented any evidence, for example, that the alleged unavailability of more adequate records of the telephone company for use by counsel for Darrel Burkhead for purposes of cross-examination of government witnesses or for any other purpose at the first trial was due to any prosecutorial misconduct on the part of the government. It is undisputed that the government made available to the defense during pretrial proceedings all telephone records it had been able to obtain.[5]

While the pending motion alleges, for further example, that the packets of TWA tickets were "available to the Government . . . and were not made available to the defendant during pretrial discovery," it is important, on the facts, to note that defendant Darrel Burkhead has not offered any evidence to support that allegation. Nor has the defendant attempted to dispute the government's statement in its response that "the Government does not have such tickets" and that "the flight records that the Government was able to secure, were made available to defendant for pretrial discovery and were introduced in evidence by stipulation of defendant." Of equal importance, on the facts, the pending motion does not contain any allegation which even suggests that the unavailability of the packet of TWA tickets in any way involved any alleged prosecutorial misconduct on the part of the government.

The state of the factual record is substantially the same in regard to documents which may have related to the loan to defendant Burkhead, the loan to the Steidles, to the statements made by witness Thomas

Steidle to a reporter for the Kansas City Star-Times, and to the execution of the stipulation. In short, it is clear that the allegations in the pending motions which relate to the government's alleged failure to produce any and all documentary evidence during pretrial proceedings or at the first trial are inadequate as a matter of pleading and are unsupported as a matter of fact.

It is therefore clear that the pending motion must be considered in light of whatever factual circumstances that may be established by the transcript of the second trial. It is also clear that defendant Burkhead has not alleged nor has he attempted to prove that the alleged differences and inconsistencies in the testimony of any government witness at the first and second trials was the result of any prosecutorial misconduct on the part of the government. Nor is there any claim that any government witness gave perjured testimony at either the first or second trial. While defendant's pending motion contains some conclusory allegations that the testimony of the witnesses related to "numerous material matters," the defendant has not attempted to demonstrate the materiality of the various alleged differences in the testimony given at the two trials.

## IV.

Defendant did not cite any legal authority whatever in support of the pending motion. The government response directed this Court's attention only to the Eighth Circuit cases which articulated the traditional rule applicable to motions for new trial based on newly discovered evidence.[6]

5. Indeed, defendant's allegation as contained in paragraph 6(d) of the pending motion corroborates the government's statement regarding the inability of anyone to have produced the telephone company records. It is there alleged "[t]hat defense counsel attempted to secure from the telephone company a copy of records of long distance calls from the defendant's telephone for the period shown in evidence but was advised by the telephone company that such records are not maintained for over 90

days and defendant himself has been unable to locate his paid telephone bills."

6. The only cases cited by the government were United States v. Cardarella, 588 F.2d 1204, 1205 (8th Cir. 1978); United States v. Ward, 544 F.2d 975, 977 (8th Cir. 1976); United States v. McColgin, 535 F.2d 471 (8th Cir.), cert. den. 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 128 (1976); United States v. Van Maanen, 547 F.2d 50, 52 (8th Cir. 1976); United States v. Pope, 415 F.2d 685, 691–2 (8th Cir.), cert. den. 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 132 (1969)

The government's response implicitly suggested that the *only* applicable standard to be used in considering a motion for new trial grounded on newly discovered evidence is whether "the evidence is of such a nature that on retrial it would probably produce an acquittal."

The *government accordingly argued that* the newly discovered evidence involved in this case should, at best, be considered to be impeachment evidence and that, quoting from *United States v. Ward*, 544 F.2d 975, 978 (8th Cir. 1976), argued that "such evidence . . . merely related to impeachment . . . [and] is not sufficient to compel granting a new trial." The questions presented by the pending motion are not that simple.

The *government failed to cite, much less* discuss, the recent Eighth Circuit cases which reflect the Eighth Circuit's recognition of the impact which a number of recent Supreme Court cases has had upon the traditional standard to be applied in considering motions for new trial based on newly discovered evidence. Those Supreme Court cases were cited but not applied in the *per curiam* opinion of *United States v. Cardarella*, 588 F.2d 1204, 1205 (8th Cir. 1978), one of the cases cited in the government's response.[7]

A less strict standard than that stated in the traditional rule articulated in *Ward* was adopted by the Eighth Circuit in *United States v. Runge*, 593 F.2d 66 (8th Cir. 1979). That case was before the Court of Appeals on both direct appeal and on appeal from the denial of a motion for new trial grounded on newly discovered evidence. The district court concluded that the allegations of the motion in regard to three of the government's trial witnesses, though serious, were merely "cumulative or impeaching" and that "given the nature and tenor of the trial testimony, could not be said to be such as to warrant an acquittal on retrial."

The *per curiam* majority opinion in *Runge* concluded, over Judge Heaney's dissent, that no hearing was necessary in regard to the motion for new trial under the circumstances of that case. All three judges in *Runge*, however, agreed that the recent Supreme Court cases to which we have made reference in footnote 6 required substantial modification of the traditional standard applicable to motions for new trial based on newly discovered evidence, apparently dependent upon the particular allegations made in the motion in regard to the evidence which was allegedly newly discovered.

In regard to the knowing use of perjured testimony, all three judges in *Runge* agreed that:

> Unlike the stricter standard of materiality used in new trial motions based on discovery of new evidence or failure of

and "cases cited therein." The "cases cited therein" go back at least as far as *Johnson v. United States*, 32 F.2d 127 (8th Cir. 1929), in which, over fifty years ago, Judge Faris relied upon 12 Cyc. 734 and cases cited therein to state the traditional rule. The leading case in probably *Berry v. State*, 10 Ga. 511 (1851). *See United States v. Johnson*, 327 U.S. 106, n.4, 66 S.Ct. 464, 90 L.Ed. 562 (1946).

The government did not cite cases such as *United States v. Stewart*, 445 F.2d 897 (8th Cir. 1971), which illustrate that there are cases involving a denial of a motion for new trial based on newly discovered evidence that have been remanded to the district court for appropriate hearing even under the traditional rule.

7. The factual basis alleged in the motion considered in *Cardarella* was that one government witness who testified at trial was a compensated informer and that another government witness had received favorable treatment in con-

nection with his prosecution in federal court in the District of Kansas and that those alleged facts had not been revealed to the defendant or his attorney in advance of trial.

On appeal to the Eighth Circuit, defense counsel unsuccessfully relied upon the following Supreme Court cases: *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *De Marco v. United States*, 415 U.S. 449, 94 S.Ct. 1185, 39 L.Ed.2d 501 (1974); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). The *per curiam* opinion in *Cardarella* affirmed on the theory that the traditional test stated in *Ward* was applicable. See an earlier discussion of those Supreme Court cases in *Ray v. United States*, 588 F.2d 601, 603 (8th Cir. 1978), decided shortly before *Cardarella* was decided.

the prosecution to disclose favorable evidence, knowing use of perjured testimony requires that a conviction be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

In instances where known perjury was used, the Court concluded:

> Where the use of known perjury involves prosecutorial misconduct, it constitutes "corruption of the truth-seeking function of the trial process." *United States v. Agurs, supra,* 427 U.S. at 104, 96 S.Ct. at 2397.

In instances in which the government may not have known but should have known, the *Runge* court concluded:

> The government may be responsible even if the prosecutor did not actually know the testimony was perjured, but should have known, *id.* at 103, 96 S.Ct. 2392; *see Giglio v. United States, supra,* 405 U.S. at 145, 92 S.Ct. 763 or if he or she did not elicit false testimony, but allowed it to go uncorrected when it appeared. *Id.* at 153, 92 S.Ct. 763, quoting *Napue v. People of State of Ill.,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

With regard to the notion suggested in the government's response in this case that no impeachment evidence is ever sufficient to compel the granting of a new trial, the Court held in *Runge* that:

> Even false testimony which merely impeaches a witness' credibility may require a new trial. *Giglio v. United States, supra,* 405 U.S. at 154, 92 S.Ct. 763; *Napue v. People of State of Ill., supra,* at 269, 79 S.Ct. 1173.

The final Eighth Circuit case to which our attention was not directed is *United States v. Carlone,* 603 F.2d 63 (8th Cir. 1979). That case was still another case in which the government allegedly used a paid informer without advising the defense prior to trial. The defendant contended on appeal that the district court's denial of his motion for a new trial grounded on newly discovered evidence should be reversed for the following reason:

Carlone's first contention on appeal is that the trial court erred in using the standards set out in *United States v. Ward,* 544 F.2d 975, 977 (8th Cir. 1976), as the test in considering the motion for the new trial based on newly discovered evidence. Carlone contends that the proper standard to be used for this set of facts is that set out in *United States v. Runge,* 593 F.2d 66, 73 (8th Cir. 1979), a standard which places less of a burden on a defendant.

*Carlone* teaches that "the standard for motions for a new trial based on newly discovered evidence, as articulated in *Ward,* . . . is not the same as the standard articulated in *United States v. Runge, supra.*" In explaining the difference between the *Ward* standard, which requires a finding that "the newly discovered evidence would probably produce an acquittal," in contrast with the *Runge* standard, which requires only a finding that "there is a reasonable likelihood that the false testimony could have affected the judgment of the jury," the Court made clear in *Carlone* that the Eighth Circuit had adopted the latter standard when it decided *Runge.* The *Carlone* court stated:

> The line of cases from which the *Runge* standard, *adopted by this court,* arose includes *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); and *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). These cases all involve specific instances of prosecutorial misconduct, *such as* the use of "known perjured testimony," or other governmental corruption of the truth finding process resulting in a deprivation of fundamental due process. (Emphasis ours).

The district court's denial of the motion for new trial was affirmed in *Carlone* because the Court of Appeals conclud-

**1174**

ed that the "newly discovered evidence [involved in that case] does not create a factual situation that falls within the *Runge* standards." [8]

We believe it is obvious that should a trial court conclude that the newly discovered evidence presented under the circumstances of a particular case does not meet the *Runge* standard of a reasonable likelihood that the alleged false testimony "could have affected the judgment of the jury," that such a court would also be required to find that the alleged newly discovered evidence would not "probably produce an acquittal" under the traditional rule stated in *Ward.* Certainly, our own view of the allegations of the defendant's pending motion and our knowledge of the circumstances of the first trial, considered in light of the transcript of the second trial, supports such an analysis.

After consideration of all the circumstances, we find and conclude that defendant Darrel Burkhead is not entitled to a new trial under either the *Runge* standard or the *Ward* standard. On the facts, this case does not involve even an allegation of any knowing use of perjured testimony. Nor is there any allegation of any other circumstance which could be said to involve the "corruption of the truth-seeking of the trial process," within the meaning of principles enunciated in *United States v. Agurs, supra.* The defendant Darrel Burkhead does not plead or attempt to prove that the government should have known that any government witness may have been inclined

to commit perjury or that such witness may have in fact given perjured testimony at either trial.

Our careful examination of the transcripts of the testimony given at both trials requires a finding that there was nothing more than the usual discrepancies in regard to quite minor details in the testimony of the government witnesses. We simply cannot find any factual basis to support a finding that there is any reasonable likelihood that the testimony, assuming such testimony to have been false, in fact related to any matter of sufficient materiality as to have affected the judgment of the jury within the meaning of the *Runge* standard. Obviously, we can not find that if the evidence which the defendant would have us consider as newly discovered, had been available to defense counsel at the time of the first trial that defense counsel's use of such evidence would probably have produced an acquittal within the meaning of the standard articulated in *Ward.*

Defendant Burkhead implicitly conceded in paragraphs 18 and 19 of his pending motion that the alleged "mistaken, incorrect, or confused" testimony of government witnesses Thomas and Maureen Steidle and that of Anthony Anderson related solely to Counts V and VI of the indictment. Defendant argues, however, in connection with Counts V and VI, that "had the defendant been aware of the discrepancies in the testimony . . . of Thomas and Maureen Steidle during the trial before this

**8.** The Court in *Carlone* amplified its conclusion by stating that "the newly discovered evidence in this case does not establish any specific claim that the F.B.I. agents who testified at Carlone's trial perjured themselves, nor does it establish any specific claim of governmental corruption concerning Carlone's trial and the incidents involved therein."

*Carlone* suggests that the Court of Appeals did not completely abandon the *Ward* standard when it adopted the *Runge* standard. For the Court in *Carlone* expressly concluded that "the trial court did not err in using the *Ward* standard in considering the facts in this case" and cited *Cardarella* in a footnote to support its further conclusion that "we cannot say that the trial court abused its discretion in denying the motion without an evidentiary hearing." We

believe that it is clear, however, that, at the very least, the *Runge* standard must be applied in appropriate cases, dependent upon the allegations of the motion for new trial and dependent upon the circumstances of a particular case.

The adoption of the *Runge* standard by the Eighth Circuit is consistent with the development of the applicable law, both in the Supreme Court and in other Circuits. *See* Professor Moore's discussion of the cases in ¶¶ 33.04 through 33.06 in Volume 8A of Moore's *Federal Practice.* See also § 557 in Wright's *Federal Practice and Procedure.* And see *United States v. Keogh,* 391 F.2d 138 (2d Cir. 1968), cited in Judge Heaney's dissenting opinion in *Runge,* for a seminal discussion of the questions presented.

Court, the defendant may well have secured acquittal at least on Counts V and VI."

Counts II, III, and IV, of course, charged simple and quite routine violations of Title 21 U.S.C. § 841(a). The evidence adduced by the government in connection with those three counts was, as is usually the case, presented by testimony of a small number of witnesses and exhibits.

The jury was appropriately instructed that a separate offense was charged in each count of the indictment and that each charge and the evidence pertaining to each charge should be considered separately. The jury was further instructed that the fact that it might find the accused guilty or not guilty of the offenses charged in one separate count should not control its verdict as to any other offense charged against the defendant in the other counts in the indictment. The note received from the jury reporting that the jury was ready to return its verdicts stated: "We have reached verdicts on the six indictments," demonstrating that the jury understood the Court's instructions in that regard.

It would require a mind more indulgent than ours to believe that the jury could have conceived that the testimony of Thomas and Maureen Steidle was adduced by the government in support of the charges alleged in Counts I, II or III. We expressly reject the defendant's suggestion that the government's evidence adduced in connection with those three counts "was not direct or overwhelming." On the contrary, we expressly find that the evidence adduced on those counts was both direct *and* overwhelming. Indeed, we believe that Karen Kastle, the government's principal witness in connection with Counts II and III, was one of the most impressive and convincing witnesses we have ever observed on the witness stand.

On the facts, we find that there was no likelihood that what the defendant describes as the "mistaken and incorrect testimony" of government witnesses Thomas and Maureen Steidle, as adduced in connection with Counts V, VI, and VII, to use defendant's words, "flowed over and tainted the verdicts on Counts II, III, and IV."

We find that defendant Burkhead was fairly and separately tried on Counts II, III, and IV, and that there is no reasonable likelihood that the jury's judgment in regard to those counts was in any way affected by the testimony and other evidence adduced in connection with Counts V, VI, and VII.

So far as the overall circumstances of the first trial are concerned, appropriate weight must be given the vigorous cross-examination of every witness called by the government and defense counsel's use of the extensive data made available by the government during the pretrial processing of this case. Nor can we ignore the instructions we gave in regard to how the testimony of the government's witnesses should be considered.

In addition to the general credibility of witness instruction suggested in § 1701 of Devitt and Blackmar *Federal Jury Practice and Instructions* (3rd Ed.), we also instructed the jury in regard to how it should consider the testimony of an informer, as set forth in § 1702 of that work; how it should consider the testimony of an immunized witness, as set forth in § 1704; the testimony of an accomplice, as set forth in § 1706; how a witness could be impeached by prior inconsistent statements, as set forth in § 1708; and in regard to impeachment by the conviction of a felony, as set forth in § 1709. The jury was also instructed that it could consider any demonstrated bias, prejudice, or hostility of a witness in determining the weight to be accorded his testimony, as set forth in § 1707.

The fact that the jury returned a verdict of not guilty on Count VII supports an inference that it considered each count separately and that it applied the instructions as given. In connection with Count VII it is apparent that the jury concluded that the testimony of the government's witness who testified in regard to that count was not sufficient to establish guilt beyond reasonable doubt. The jury apparently required some corroborative evidence in addition to the testimony of the government's principal

witness, Thomas Seidle, who testified under immunity, before it convicted on the remaining counts of the indictment.

An appropriate order will be entered denying defendant Burkhead's pending motion for new trial grounded on newly discovered evidence.

V.

The parties are familiar with the fact that both defendant Darrel Burkhead and defendant Garcia presently await sentence on Count I of the indictment by the Honorable Russell G. Clark, presiding judge of Division III of this Court.

The undersigned judge has conferred with Judge Clark in order to coordinate the time for imposition of the sentences which must be imposed on defendant Darrel Burkhead in both Division I and Division III of this Court. At the time of that conference, Judge Clark had already set the time and date for imposition of defendant Garcia's sentence on Count I in Division III for Thursday, June 19, 1980 at 9:00 a. m. Judge Clark stated that he wanted to impose sentences on both defendants convicted under Count I on the same day.

Judge Clark and I therefore concluded that in light of the fact that sentences must be imposed on defendant Darrel Burkhead in regard to Counts II through VI, inclusive, in Division I that those sentences should be imposed by me in Division I before Judge Clark imposed sentence on defendant Darrel Burkhead on Count I in Division III in order that Judge Clark may give appropriate consideration to the sentences imposed on defendant Darrel Burkhead in Division I before he imposes sentence on that defendant in Division III.

Any other procedure would force Judge Clark to proceed in the dark in regard to imposition of sentence on defendant Burkhead on Count I and without knowledge of what sentences may have been imposed on defendant Burkhead on Counts II through VI, inclusive, in Division I.

For it is impossible for any judge to decide what sentence should be imposed in regard to any count on which defendant Darrel Burkhead has been convicted until he has had the opportunity to give careful consideration to what may be said by defendant Burkhead and his counsel when allocution is granted in accordance with the requirements of Rule 32(a)(1) of the Federal Rules of Criminal Procedure.

For the reasons stated, it is

ORDERED (1) that defendants Darrel Burkhead's motion for new trial on the ground of newly discovered evidence in regard to Counts II through VI, inclusive, filed April 14, 1980, should be and the same is hereby denied. It is further

ORDERED (2) that the date for imposition of sentence on defendant Garcia on Count I, heretofore set by the Honorable Russell G. Clark, presiding judge of Division III, for Thursday, June 19, 1980, at 9:00 a. m., in Division III of this Court, should be and is hereby confirmed. It is further

ORDERED (3) that the date for sentencing defendant Darrel Burkhead on Counts II through VII, inclusive, in Division I by the undersigned judge is hereby set for Thursday, June 19, 1980 at 9:30 a. m. in Division I of this Court. It is further

ORDERED (4) that, in accordance with the request of the Honorable Russell G. Clark, presiding judge of Division III, the undersigned judge, acting as Chief Judge of this Court, sets the date for imposition of sentence on defendant Darrel Burkhead on Count I in Division III for Thursday, June 19, 1980, said sentence to be imposed immediately after defendant Darrel Burkhead will have been sentenced on Counts II through VII, inclusive, in Division I.